*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-10-00725-CV

Luis **DAVIS**, Trustee of the Davis Family Blanco Road Property Trust,
Appellant

v.

**CANYON CREEK ESTATES HOMEOWNERS ASSOCIATION**, et al.
Appellees

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-12456
Honorable Martha Tanner, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:       Karen Angelini, Justice
               Steven C. Hilbig, Justice, concurring in the judgment only
               Marialyn Barnard, Justice

Delivered and Filed:  July 13, 2011

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

       This is an appeal by Luis Davis, Trustee of the Davis Family Blanco Road Property Trust

("the Trust") from a trial court's order granting summary judgment in favor of Canyon Creek

Estates Homeowners Association ("the Association") in a case involving restrictive covenants.

---

[1] On original appeal, the Honorable Karen Pozza presided over the hearing on the motion to allow service by electronic mail and signed the order granting the motion. The Honorable Peter Sakai presided over the hearing on the motion to dismiss and signed the order granting the motion to dismiss with prejudice. The Honorable Gloria Saldana signed the agreed partial summary judgment order. The Honorable Karen Pozza signed the order denying the request for sanctions. The Honorable David A. Berchelmann Jr. signed the final judgment. After remand, and relative to this appeal, The Honorable Janet Littlejohn signed the order granting the supplemental motion for summary judgment. The Honorable Martha Tanner presided over the hearing on attorney's fees and signed the final judgment.

This case was previously appealed to this court, and we affirmed the trial court's partial summary judgment order. *See Davis Family Blanco Rd. Prop. Trust v. Canyon Creek Estates Homeowners Ass'n*, No. 04-09-00007-CV, 2009 WL 3382232, *5 (Tex. App.—San Antonio Oct. 21, 2009, no pet.). We remanded the matter to the trial court for further proceedings on the Trust's claims that were not disposed of in the partial summary judgment order. *Id.* In response to our affirmance and remand, the Association filed for summary judgment on the claims it alleged remained and also filed a counterclaim through which it sought attorney's fees. The trial court granted summary judgment in favor of the Association and awarded the requested attorney's fees. On appeal, the Trust contends the trial court erred in: (1) granting summary judgment in favor of the Association, and (2) awarding the Association attorney's fees. We affirm in part and reverse and render in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1957, Valley View Heights, a subdivision located along Blanco Road in San Antonio, Texas, adopted and recorded restrictive covenants pertaining to lots within the subdivision. The covenants mandated that property in the subdivision "shall be used for residence purposes only." The covenants further provided they were "to run with the land" and "shall continue in full force and effect until revoked or modified by owners of more than one-half of the property." The Valley View Heights subdivision was later expanded and incorporated into a larger subdivision renamed Canyon Creek Estates. Canyon Creek Estates consists of approximately thirty-five single-family homes. In 1963, Canyon Creek Estates adopted the 1957 restrictive covenants, reaffirming that property within the subdivision was restricted to residential use.

In 1997, Edward and Rosaura Davis, who are the parents of Luis Davis, acquired Lot 8 in the Canyon Creek Estates subdivision. Luis Davis and his brother moved into the home on Lot

8, residing there for several years. In March of 2000, Elare Partners, Ltd. ("Elare") acquired Lots 6 and 7, which adjoined Lot 8. Elare is a partnership controlled by the Davis family, and Edward Davis is the general partner. Lots 6, 7, and 8, along with several other lots, front Blanco Road. After Elare purchased Lots 6 and 7, Luis Davis moved into the home on those lots with his wife and stepson.

In 2001, Canyon Creek Estates recorded a document entitled "Canyon Creek Estates Homeowners Association Covenants and Restrictions," which adopted the 1957 and 1963 restrictive covenants, reaffirming that property within the subdivision was restricted to residential use. This document also contained other changes, but those are not relevant to this appeal. The document was recorded after the Association, in 1997, sent a ballot to all thirty-five homeowners in the subdivision with the proposed covenants and restrictions. The record shows that twenty-seven ballots were returned, i.e., a majority of the homeowners voted, and only six opposed the revised covenants and restrictions. Therefore, as required by the 1957 and 1963 restrictive covenants, more than fifty percent of the property owners approved the revised covenants and restrictions.

In 2005, Luis Davis purchased a home in the interior of the subdivision and moved his family to that home. Around the same time, Luis Davis's brother and his brother's family moved out of the home on Lot 8. In October 2005, the properties were listed for sale by the parents and Elare as residential properties; however, the properties were taken off the market on March 2, 2006. There was some interest in the properties, but according to Davis, after those interested determined the properties were restricted to residential use pursuant to a covenant, their interest waned.

According to documents produced during the initial litigation, Edward and Rosaura Davis and Elare sold their properties on Blanco Road to "Luis Davis, Trustee of the Davis Family Blanco Road Property Trust" on August 13, 2006, by general warranty deed. Though the deeds state the date of sale as August 13, 2006, the day before suit was filed, neither deed was notarized until January 31, 2008, and neither deed was produced until the Trust filed a response to a November 26, 2008 motion for sanctions, which sought sanctions based on the Trust's alleged lack of ownership, and therefore lack of standing to file suit.

On August 14, 2006, after failing to sell the properties, the Trust itself brought suit against the Association and the individual property owners within Canyon Creek Estates. The Trust sought a declaratory judgment that the property within the subdivision should no longer be burdened by restrictive covenants limiting the use of the property to residential purposes. The petition asserted the Trust owned lots 6, 7, and 8 in the subdivision. The petition alleged, in essence: (1) the 2001 restrictive covenants were null and void because they were signed only by the Association's officers and directors rather than by a majority of the property owners; or (2) circumstances and conditions had so changed such that the lots located on Blanco Road should no longer be restricted to residential use as set forth in the 1957, 1963, and 2001 covenants.

The Association answered, and thereafter, on January 3, 2008, filed a plea in abatement and a plea to the jurisdiction. The Association asserted the Trust lacked the legal capacity to be a party to the lawsuit, noting that the proper party would be the trustee of the Trust. The Association also asserted the Trust did not own property in the subdivision, i.e., Lots 6, 7, and 8 were owned by Edward and Rosaura Davis and Elare, and therefore, the Trust lacked standing to request declaratory relief. *See Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667-69 (Tex. App.—San Antonio 2008, no pet.) (holding one must own property in subdivision to have

standing to seek declaratory relief regarding enforceability of restrictive covenants). The trial court granted the plea, but gave the Trust time to "file an amended petition adding the correct property owners as plaintiffs." In response, the Trust filed an amended petition naming the plaintiff as Luis Davis, Trustee of the Davis Family Blanco Road Property Trust. The Association acknowledged that this amendment resolved the capacity issue, but asserted it did not resolve the jurisdictional issue of standing because documentation showed the property allegedly owned by the Trust, i.e., Lots 6, 7, and 8, were still owned by the Davises and Elare. The Association therefore filed a motion to dismiss for want of jurisdiction, asserting that because the Trust was not the property owner, it lacked standing to challenge the restrictive covenants. The Association also filed a partial motion for summary judgment in which it alleged the Trust was estopped from invoking the "changed conditions" doctrine as to the 1957 and 1963 deeds because at the time the Davis family acquired Lots 6, 7, and 8, they knew about the existing conditions on Blanco Road.

On May 27, 2008, the trial court held a hearing on the motion to dismiss and the motion for partial summary judgment. The trial court granted the Trust's motion for continuance as to the partial summary judgment based on lack of notice, but proceeded with the hearing on the motion to dismiss. At the hearing, and as mentioned above, the Trust introduced into evidence two unrecorded deeds dated August 13, 2006, but notarized on January 31, 2008. The first deed conveyed Lot 8 from Edward and Rosaura Davis to the Trust, and the second conveyed Lots 6 and 7 from Elare to the Trust. At the conclusion of the hearing, the trial court granted the motion to dismiss, dismissing all claims, except the Association's claims for attorney's fees. Despite having dismissed all of the Trust's claims based on lack of standing, the trial court insisted on setting a hearing on the Association's motion for partial summary judgment.

In accordance with the trial court's verbal order, the parties set June 3, 2008, as the date for the hearing on the partial summary judgment. At that hearing, the parties presented an agreed order, which the trial court signed. In the order, the trial court granted the Association's partial motion for summary judgment, and further stated that the Trust should take nothing "on all claims for declaratory judgment regarding claims that changes in conditions or circumstances as of the date Plaintiff . . . acquired the property justify the canceling or invalidation of any restrictive covenants on Plaintiff's . . . properties as to use for residential purposes."

In December 2008, the trial court held a hearing on the Association's request for sanctions in the form of attorney's fees. The trial court denied the request for sanctions. Thereafter, a final judgment was signed on December 18, 2008.

The Trust appealed and, among other things, contested the trial court's order granting partial summary judgment. As noted in the introduction, we affirmed the trial court's order granting partial summary judgment in favor of the Association and remanded the matter to the trial court for further proceedings on the Trust's claims that were not disposed of by the partial summary judgment. *Id.*

Upon remand, the Association filed a supplement to its previously filed partial motion for summary judgment. In the supplemental motion, the Association asserted the only remaining claims were the Trust's attacks on the 2001 restrictive covenants as the Trust had agreed to the granting of the Association's partial motion for summary judgment, which challenged only the Trust's attacks on the 1957 and 1963 covenants based on changed circumstances. The Association, therefore, filed the supplemental motion for summary judgment to address the Trust's requests for declaratory relief as to the 2001 covenants. According to the Trust's live pleading, the 2001 covenants were null and void because they were signed only by the

Association's officers and directors rather than by a majority of the property owners, or circumstances and conditions had so changed such that the lots located on Blanco Road should no longer be restricted to residential use pursuant to the 2001 covenants. The Association also filed a Third Amended Counterclaim in which it sought attorney's fees under two theories: (1) anticipatory breach of the restrictive covenants by the Trust under section 5.006 of the Texas Property Code; and (2) sanctions under rule 13 of the Texas Rules of Appellate Procedure and Chapter 10 of the Texas Civil Practice & Remedies Code.

The Trust filed a response to the supplemental motion for summary judgment, attaching evidence it asserts establishes such a radical change in circumstances as to void the restrictive covenants. This included an affidavit describing car crashes, destruction of mailboxes, and commercial growth occurring along Blanco Road. The Trust also filed a response to the Third Amended Counterclaim.

The trial court granted the Association's supplemental motion for summary judgment on April 26, 2011. Pursuant to the judgment, the Trust was to take nothing on its claims, which were dismissed with prejudice. The trial court did not rule upon the counterclaim at the time the summary judgment order was signed.

As to the Association's counterclaim for attorney's fees, the parties agreed to waive a jury trial, and a non-jury setting was obtained. The reasonableness of the fees sought by the Association was not disputed; rather, the Trust disputed the Association's entitlement to recover under any of the theories pled in the counterclaim. After an evidentiary hearing, the trial court took the matter under advisement. Ultimately, the trial court entered a written order, which was encompassed in the final judgment. Pursuant to the final judgment, the Association was awarded

$30,000 in attorney's fees and contingent appellate attorney's fees under the auspices of section 5.006 of the Texas Property Code.

Following entry of the final judgment, the Trust perfected this appeal. On appeal, the Trust contends the trial court erred in granting the supplemental motion for summary judgment and erred in awarding attorney's fees pursuant to section 5.006 of the Texas Property Code.

## ANALYSIS

### Summary Judgment

#### Remaining Claim after First Appeal

Before we address the substance of the summary judgment issue, we must first determine what claims remained after the first appeal. That is, we must decide what claims were not disposed of by the original agreed order on the Association's motion for partial summary judgment, and thereafter remanded by this court. The parties disagree on what issues remained after our original opinion. The Association asserts the only claim that remained after remand was the Trust's assertion that the 2001 restrictive covenants were null and void because they were signed only by the Association's officers and directors rather than by a majority of the property owners. The Association contends the language of the trial court's order, which was quoted by this court in our original opinion, foreclosed any claims as to changed circumstances. The Trust, however, contends all of its claims remained viable and the agreed order was nothing more than a statement of Texas law limiting claims of changed circumstances to changes in conditions that occur after the party seeking to nullify or revise the covenants acquires the property.

After reviewing the record from both the original appeal and the current appeal, as well as our first opinion in this matter, we hold the Association is correct, but only in part. We agree

with the Association that after remand the Trust's assertion that the 2001 restrictive covenants were null and void because they were signed only by the Association's officers and directors rather than by a majority of the property owners was still viable.[2]  However, we hold that contrary to the Association's contention, the Trust's claim that circumstances and conditions had so changed since the time the Trust acquired Lots 6, 7, and 8 that they should no longer be restricted to residential use is still viable as to the 2001 restrictive covenants.

Our holding is based on two things.  First, the Association's original partial motion for summary judgment argued the Trust was precluded from asserting "changed circumstances" only as to the 1957 and 1963 covenants.  There was no mention of, or reference to the 2001 covenants with regard to changed circumstances.  And second, the language in the court's amended order on the motion for partial summary judgment.  In that order, the trial court granted the Association's motion for partial summary judgment, and determined the Trust should take nothing "on all claims for declaratory judgment regarding claims that changes in conditions or circumstances as of the date Plaintiff . . . acquired the property justify the canceling or invalidation of any restrictive covenants on Plaintiff's . . . properties as to use for residential purposes."  We shall, therefore, review the summary judgment issue based on this conclusion as to the remaining claims.

*Standard of Review*

Additionally, before we can conduct our substantive review of the summary judgment issue, we must determine the nature of the Association's motion for summary judgment.  *See Sanchez v. Mulvaney*, 274 S.W.3d 708, 710 (Tex. App.—San Antonio 2008, no pet.) (recognizing necessity of determining whether motion for summary judgment was traditional or

---

[2] Notably, however, the Trust has abandoned this claim as it formed no part of its response to the Association's supplemental motion for summary judgment, and forms no part of its current appellate argument.

no evidence motion for summary judgment before undertaking review); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 375 (Tex. App.—Dallas 2009, pet. denied) (same). In its motion for summary judgment, the Association asserted that in order for the Trust to nullify the restrictions based on changed circumstances, the Trust was required to show that the alleged changes were "so radical and grand" that it was no longer possible for the trust to secure the benefits sought to be realized by the restrictions within the protected subdivision. The Association alleged there was *no evidence* of such a change. We hold that by this language, the Association moved for a no evidence motion for summary judgment pursuant to rule 166a(i) of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 166a(i). Specifically, the Association asserted there was no evidence of grand and radical changes in circumstances so as to justify nullification of the covenants since 1997 and 2000 when the Davis family first acquired Lots 6, 7, and 8.[3] Therefore, we hold the Association sought summary judgment on no evidence grounds, arguing there was no evidence of changes in circumstances that were "so radical and grand" after the Davis family first acquired the property in 1997 and 2000 that it was no longer possible to secure the benefits sought to be realized by the restrictions within the protected subdivision. *See Tex. Integrated Conveyor Sys., Inc.*, 300 S.W.3d at 375 (holding court should determine nature of motion for summary judgment, i.e.,

---

[3] It is unclear to the court why the Association asserted in its supplemental motion that the trial court should look to evidence of changed circumstances from 1997, when Edward and Rosaura Davis acquired Lot 8, and 2000 when Elare acquired Lots 6 and 7. On appeal, the Association argues the court could only look at evidence of changed circumstances from August 13, 2006–the date of the deeds from the Davises and Elare to the Trust–or January 31, 2008–the date the deeds were notarized. Though the Association argues 2006 or 2008 are the applicable dates in its appellate brief, they did not make that argument below. Accordingly, this court must look at any evidence of changed circumstances produced by the Trust from 1997 onward as this is the argument presented by the Association in the court below. *See Ritchey v. Pinnell*, 324 S.W.3d 815, 821 (Tex. App.—Texarkana 2010, no pet.) (holding that when reviewing order granting summary judgment, appellate court is restricted to arguments expressly presented to trial court in motion for summary judgment); *see also Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 314 n.7 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding summary judgment movant could not argue on appeal ground for summary judgment not presented to trial court).

traditional or no evidence, after considering substance of motion, rather than categorizing motion strictly by its form or title).

The propriety of a no evidence summary judgment is a question of law which we review de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a no evidence motion for summary judgment, we examine the record in the light most favorable to the nonmovant. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). However, once a party properly moves for no evidence summary judgment by specifically asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of proof at trial, the burden is on the nonmovant to present more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements. TEX. R. CIV. P. 166a(i); *Wal-Mart*, 92 S.W.3d at 506. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

*Applicable Law*

It has long been the law in this State that a court may nullify or void a restrictive covenant limiting property use to residential only when the party seeking to nullify or modify the restriction proves either: (1) the property owners have acquiesced in violations of the residential restriction so as to amount to an abandonment of the covenant or a waiver of the right to enforce it; or (2) as is pertinent in this case, there has been "such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant." *Cowling v. Colligan*, 158 Tex. 458, 312 S.W.2d 943, 945 (1958). To justify voiding a residential restriction based on changed circumstances or

conditions, the courts, including this one, have held the changed conditions must be "radical." *Simon v. Henrichson*, 394 S.W.2d 249, 254 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.); *Lebo v. Johnson*, 349 S.W.2d 744, 749-750 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.); *Hemphill v. Cayce*, 197 S.W.2d 137, 141 (Tex. Civ. App.—Fort Worth 1946, no writ); *see Cowling*, 321 S.W.2d at 945 (change of conditions must be "great"). In considering whether such a "radical" change has occurred, courts look to: (1) the size of the restricted area; (2) the location of the restricted area with respect to where the change has occurred; (3) the type of change or changes that have occurred; (4) the character and conduct of the parties or their predecessors in title; (5) the purpose of the restrictions; and (6) to some extent, the unexpired term of the restrictions. *Id.* Greater weight is given to changes that occur within the subdivision than those occurring outside the restricted area. *Simon*, 394 S.W.2d at 255 (citing *Lebo*, 349 S.W.2d at 750).

Moreover, a court may not void or modify a residential restriction as to a particular lot solely on the ground that a change of conditions has rendered that particular lot unsuitable for residential purposes and it would be unfair to the lot owner to enforce the restriction. *Cowling*, 312 S.W.2d at 945. Rather, the fairness to the owner of the particular lot is just "one facet of the judicial inquiry." *Id.* The fairness to the lot owner must be weighed against the fairness to the other lot owners who bought the property in reliance on the restriction and wish to preserve the character of the area. *Id.*

As stated by this court in *Lebo*:

> In every growing city it is inevitable that sooner or later commercial and business areas must come face to face with residential areas, and it is then that the restrictions are most valuable to the interior lot owners. It is when the outer tier of lots becomes more valuable for commercial and business purposes that the restrictions come into play and prevent the residential area from being taken over by commercial establishments.

\*   \*   \*

> The front tier lots must bear the brunt of the onslaughts of business and commerce, otherwise there would be started a system of gradual encroachment that might swallow up the entire residential area. The other tiers of lots might fall like ten pins, once the encroachment of commerce and business was begun. One of the best places to hold the encroachment of business and commerce upon a restricted residential area is at a highway or street.

349 S.W.2d at 751; *see also Scaling v. Sutton*, 167 S.W.2d 275, 281 (Tex. Civ. App.—Fort Worth 1942, writ ref'd w.o.m.) (recognizing domino effect if single lot owner allowed to violate residential restriction); *Bethea v. Lockhart*, 127 S.W.2d 1029, 1033 (Tex. App.—San Antonio 1939, writ ref'd) (same).

Additionally, Texas courts have recognized a landowner cannot rely on "changed conditions" that have already occurred by the time he acquires the property. *See*, *e.g.*, *Oldfield v. City of Houston*, 15 S.W.3d 219, 228 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), superseded by statute on other grounds as recognized in *Truong v. City of Houston*, 99 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Traeger v. Lorenz*, 749 S.W.2d 249, 250 (Tex. App.—San Antonio 1988, no writ) (citing *Lebo*, 349 S.W.2d at 750); *Ortiz v. Jeter*, 479 S.W.2d 752, 758 (Tex. App.—San Antonio 1972, writ ref'd n.r.e.); *Davis v. Hinton*, 374 S.W.2d 723, 728 (Tex. Civ. App.—Tyler 1964, writ ref'd n.r.e.).

*Application*

Because the Association alleged no evidence of changes in circumstances that were "so radical and grand" after the Davis family first acquired the property in the subdivision in 1997 and 2000 that it was no longer possible to secure the benefits sought to be realized by the restrictions within the protected subdivision, it was incumbent upon the Trust to present more than a scintilla of probative evidence to raise a genuine issue of material fact on this element.

*See* Tex. R. Civ. P. 166a(i); *Wal-Mart*, 92 S.W.3d at 506. In doing so, the Trust has to present evidence that created more than mere surmise or suspicion of a radical change. *See King Ranch*, 118 S.W.3d at 751.

In response to the Association's no evidence motion, the Trust argued and submitted evidence attempting to show a radical change of circumstances that made it impossible to secure in a substantial degree the benefits sought to be realized through the covenant. The Trust submitted evidence showing that when the Davis family first purchased Lot 8, Blanco Road was merely a two-lane road. However, Luis Davis admitted Loop 1604 and Blanco Road were already in existence, and before the purchase of Lots 6 and 7, the family knew of the City of San Antonio's intent to widen Blanco Road. The Trust also presented evidence that since the purchase of the property by the Davis family: (1) motorists exceed the speed limit on Blanco Road, and Luis Davis had witnessed "various speeding motorists almost lose control of their vehicles; (2) Luis Davis's mailbox had been rundown "no less than seven" times by speeding motorists; (3) in July 2007, a speeding motorist crashed into a tree on Lots 6 and 7; (4) in November 2007, a speeding motorist crashed into a tree in a neighbor's yard; (5) in October 2009, there was a collision between two vehicles on Blanco Road and one of the roads leading into the subdivision, and the occupants of the vehicles were taken to the hospital; and (6) there had been an "explosion" of commercial businesses along Blanco Road since it was widened, including HEB, Bank of America, McDonald's, Sonic, Papa John's, Starbucks, Pizza Hut, Jim's, J.P. Morgan Chase Bank, and a self-storage facility. Thus, the Trust argues, it is not simply the increased traffic or commercial growth, but the danger created by those conditions that warrant voiding the residential restrictive covenant. The Trust asserts this evidence is more than a scintilla of evidence of changes in circumstances that were "so radical and grand" that it was no

longer possible to secure the benefits sought to be realized by the restrictions within Canyon Creek Estates.

This court stated in *Lebo* that while the rule is plain, i.e., residential only restrictions will not be abrogated absent proof of a radical change that makes it impossible to secure in a substantial degree the benefits sought to be realized through the covenant, the difficulty arises when it is necessary to apply the rule to the facts of a particular case. 349 S.W.2d at 749. The court noted that the facts are always different, and no two cases are identical. *Id.* Accordingly, no hard and fast rule can be laid down as to just when, due to changed conditions, it is no longer possible to accomplish the original development plan. *Id.*

We must therefore decide, based on the particular facts of this case as established by the Trust's summary judgment evidence, whether since the Davis family acquired the property in the subdivision in 1997 and 2000 there is more than a scintilla of evidence that there has been such a radical change in conditions that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the residential restriction. *See Cowling*, 312 S.W.2d at 945; *Simon*, 394 S.W.2d at 254; *Lebo*, 349 S.W.2d at 749-750; *Hemphill*, 197 S.W.2d at 141. As set forth above, in determining whether there has been a "radical" change, we consider: (1) the size of the restricted area; (2) the location of the restricted area with respect to where the change has occurred; (3) the type of change or changes that have occurred; (4) the character and conduct of the parties or their predecessors in title; (5) the purpose of the restrictions; and (6) to some extent, the unexpired term of the restrictions. *Id.*

We must also keep in mind that the law states increased commercial growth and increases in traffic and congestion in streets bounding a restricted subdivision are alone insufficient to warrant nullification of the residential restriction. *Hemphill*, 197 S.W.2d at 141.

Having reviewed the Trust's summary judgment evidence in the light most favorable to the Trust, and in light of the factors set forth in the relevant case law, we hold the Trust has not presented even a scintilla of evidence to show changes in circumstances "so radical and grand" that it was no longer possible for the Davis family or any other homeowner to secure the benefits sought to be realized by the restrictions within Canyon Creek Estates. *See King Ranch*, 118 S.W.3d at 750; *Wal-Mart*, 92 S.W.3d at 506. Although the Trust did present evidence of changed circumstances, there was no evidence to establish the homeowners could no longer secure the benefits secured by the residential only restriction imposed by the Association. Accordingly, we overrule the Trust's first issue and hold the trial court did not err in granting summary judgment in favor of the Association.

### *Attorney's Fees*

After remand, the Association filed its Third Amended Counterclaim. The Association sought attorney's fees under section 5.006 of the Texas Property Code, contending the Trust had engaged in anticipatory breach of the restrictive covenants, thereby entitling the Association to attorney's fees. *See* TEX. PROP. CODE ANN. § 5.006 (West 2004). The Association also sought attorney's fees in the form of sanctions under rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code. *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.001, *et. seq.* (West 2002). However, the trial court denied the Association recovery under rule 13 and Chapter 10, and it specifically awarded attorney's fees, both through trial and in the event of successful appeals, pursuant only to section 5.006 of the Property Code. On appeal, the Trust contends the trial court erred in awarding attorney's fees to the Association under section 5.006. The Trust does not challenge the reasonableness of the attorney's fees awarded to the Association, but challenges only the Association's right to recover

fees at all. *See Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 240-41 (Tex. App.—San Antonio 2001, pet. denied) (noting that when party challenges reasonableness of attorney's fees, court may look at sufficiency of evidence to support amount of fees).

Following the trial court's grant of the Association's supplemental motion for summary judgment, the trial court held a hearing on the Association's counterclaim and request for sanctions. It is undisputed that the parties waived their right to a jury trial on the counterclaim and trial was to the court. At the beginning of the hearing, both the Association and the Trust asked the court to take judicial notice of the court's file, which the trial court agreed to do.

Section 5.006 of the Property Code provides:

> In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.

TEX. PROP. CODE ANN. § 5.006. In explaining its counterclaim of anticipatory breach, the Association stated at the hearing that the Trust:

> . . . made it clear that they [sic] want to use Lots 6, 7, and 8 for nonresidential purposes in breach of the restrictive covenants. Canyon Creek is the prevailing party to the extent of the agreed order and is the prevailing party on the remaining claim, if any. [The Trustee] had engaged in anticipatory breach of the restrictive covenants and this counterclaim is, therefore, based on breach of the restrictive covenants pertaining to real property. In other words an anticipatory breach, because they've [sic] made it very clear, if we can win this suit, we intend to go commercial.

On appeal, the Trust first argues the Association cannot recover fees under section 5.006 because the Association failed to introduce any evidence of an anticipatory breach of the restrictive covenant by the Trust. More specifically, the Trust contends the Association did not enter any evidence into the record at the hearing, other than a letter from the Trust's counsel contending our opinion did not dispose of any of the Trust's claims, in support of its counterclaim. We disagree with this contention. As noted above, the Association asked the trial

court to take judicial notice of the entire file, which the trial court did, and then argued that based on documents in that file, the Trust committed an anticipatory breach. There was, therefore, evidence introduced at the hearing–whether this evidence establishes the Association's right to recover under section 5.006 is a separate question.

The Trust next argues that even if evidence was introduced of its intention to have Lots 6, 7, and 8 rezoned for commercial use, or that the Trust filed this suit in an effort to void the restrictions so that it could put the property to commercial use, this was not evidence of anticipatory breach of the restrictive covenants. To the contrary, the Trust argues, this was actually evidence of the Trust's willingness to abide by the residential restriction until it could be legally removed, negating repudiation of the covenants.

We believe the question is this: was evidence of the Trust's efforts to change the property from residential use to commercial use by seeking to have the property rezoned or by filing suit to nullify the residential restriction based on changed circumstances evidence of anticipatory breach so as to entitle the Association to recover attorney's fees under section 5.006 of the Property Code? We hold it is not.

A restrictive covenant is a contract subject to the same rules of construction and interpretation as any other contract. *Dynamic Pub. & Distrib. L.L.C. v. Unitec Indus. Ctr. Prop. Owners Ass'n, Inc.*, 167 S.W.3d 341, 345 (Tex. App.—San Antonio 2005, no pet.). With regard to anticipatory breaches of a contract, it has long been the law in Texas that before there can be an anticipatory breach, there must be an unconditional declaration of an intention not to perform the contract. *Pollack v. Pollack*, 39 S.W.2d 853, 857 (Tex. Comm'n App. 1931, holdings approved), *reh'g denied*, 46 S.W.2d 292 (1932); *Moore v. Jenkins*, 109 Tex. 461, 211 S.W. 975, 976 (1919); *Kilgore v. Nw. Tex. Baptist Educational Society*, 90 Tex. 139, 37 S.W. 598, 600

(1896); *McKenzie v. Farr*, 541 S.W.2d 879, 882 (Tex. Civ. App.—Beaumont 1976, writ ref'd n.r.e.). The repudiation must be a distinct, positive, unequivocal, and absolute refusal to perform the contract in the future. *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)); *Jenkins v. Jenkins*, 991 S.W.2d 440, 447 (Tex. App.—Fort Worth 1999, pet. denied). The party who is alleged to have committed an anticipatory breach must show a fixed intention to abandon, renounce, and refuse to perform the contract. *Jenkins*, 991 S.W.2d at 447. As stated in 1896 by the supreme court in *Kilgore*:

> But a mere assertion that the party will be unable or will refuse to perform his contract is not sufficient. It must be a distinct and unequivocal absolute refusal to perform the promise[.]

37 S.W. at 600.

Based on the record before us, there is no evidence of anticipatory breach by the Trust. The evidence in the record shows only that the Trust sought legal avenues to remove the residential restriction through rezoning and by filing suit to nullify the restriction based on changed circumstances. We hold this is not evidence of a distinct, positive, unequivocal, and absolute refusal to abide by the residential restriction. *See El Paso Prod. Co.*, 112 S.W.3d at 621 (citing *Van Polen*, 23 S.W.3d at 516; *Jenkins*, 991 S.W.2d at 447. To the contrary, the Trust's efforts to remove the restriction in a valid, legal manner establishes its recognition that the property cannot currently be used for any purpose other than residential. It is, in fact, evidence of the Trust's intent to abide by the restriction if it ultimately fails in its legal attempts to change it.

The evidence relied upon by the Association merely showed the Trust's desire to legally alter the current restriction; it does not establish an intent to refuse to abide by the residential

restriction.    Accordingly, we sustain the Trust's second issue and hold the portion of the judgment awarding attorney's fees must be reversed.

## CONCLUSION

Based on the foregoing, we affirm the trial court's summary judgment in favor of the Association, but reverse and render judgment in favor of the Trust on the Association's claim for attorney's fees.

Marialyn Barnard, Justice