

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00287-CV

———————————————————

SHERRY DENSMORE, THOMAS J. LOUGHREY JR., ROBERT C. HANKINS II, AND MATTHEW L. GALLITON, Appellants

V.

J. HORACE MCCARLEY, DEBBY MCCARLEY, AND LONESTAR DOODLES, LLC, Appellees

---

On Appeal from County Court at Law No. 1
Parker County, Texas
Trial Court No. CIV-16-1104

---

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellants seek to reverse the trial court's denial of their request for a declaration and for an injunction barring Appellees' operation of a dog-breeding business on their property, which allegedly violated restrictive covenants applicable to the property. The trial court entered extensive findings of fact and conclusions of law, holding that Appellees' affirmative defenses to enforcement—specifically, waiver by abandonment—precluded Appellants' requested injunctive relief. Because the evidence, viewed through the appropriate prism, was legally and factually sufficient to support the trial court's findings and conclusions that enforcement of the restrictions had been waived by abandonment, we affirm the trial court's final judgment.

## I. BACKGROUND

In January 2016, appellees J. Horace and Debbie McCarley bought a home on a fifteen-acre tract located in a Parker County housing subdivision (Southridge). Southridge contains forty-three lots and does not have a homeowner's association or an architectural committee. The McCarleys selected the property because they wanted to be able to operate appellee Lonestar Doodles, LLC—the McCarleys' licensed dog-breeding business—and to live on the same property. In March 2016, the McCarleys began building two climate-controlled buildings on the tract to house the dogs. By June 2016, the buildings were completed at a cost of $360,000, and the McCarleys began operating Lonestar Doodles on the property.

In October 2016, the McCarleys received two anonymous phone calls "informing them of the Restrictive Covenants." A month later, appellant Sherry Densmore, who lived in Southridge, sent the McCarleys a letter stating that Lonestar Doodles was in violation of three of the thirteen prohibitive deed restrictions (the Restrictions)—numbers 5, 6, and 13—governing all properties in Southridge:

> 5. No swine shall ever be kept upon the property nor shall any part of the property ever be used for a commercial feed lot for livestock or fowl or dog or cat kennel.
>
> 6. No noxious or offensive activity shall be conducted or maintained upon any tract which may be or may become an annoyance or nuisance to the neighborhood.
>
>    . . . .
>
> 13. Businesses of a limited nature are permitted, such as professional (real estate, legal, insurance, accounting, engineering, etc.) and limited hobby-type businesses. Space required for business purposes must be contained within the residence or attached by breezeway and be of similar or compatible construction with the residence. No wrecking or salvage yards or any other business requiring large building or open-air storage of materials or merchandise shall be permitted. Excessive or offensive noise, fumes or odors, excessive traffic, and unsightly conditions are expressly prohibited in order to protect neighboring property values and enjoyment of rural living.

Densmore attached a copy of the Restrictions, which had been recorded in the real-property records of Parker County in 1981. The Restrictions contained a severability paragraph: "Invalidation of any of these covenants by judgment or court order shall in no wise affect any of the other provisions which shall remain in full force and effect." The Restrictions also authorized any property owner to sue for injunctive relief to

3

enforce the Restrictions. The McCarleys "tr[ied] to work with" Densmore to address

her complaints and installed extensive soundproofing.[1]

But on December 30, 2016, Densmore filed suit against the McCarleys seeking

a declaration that the Restrictions were valid and enforceable, a temporary and

permanent injunction barring operation of Lonestar Doodles on the property,

damages, and attorney's fees. She also raised a negligence claim based on the alleged

nuisance nature of Lonestar Doodles. Other Southridge owners—appellants Thomas

J. Loughrey Jr., Robert C. Hankins II, and Matthew L. Galliton (collectively,

Intervenors)[2]—filed a petition in intervention against the McCarleys and Lonestar

---

[1]Horace described how they soundproofed the kennel building:

> [B]etween each, there are pillars, steel pillars, four by four, . . . to hold up the roof. Or the awning that goes over the kennels. In between each one of those we put a[n] electric garage door with the soundproofing material on it.
>
> . . . .
>
> It's called Acoustiblok. It's got the same density rating that lead would have. It's the best that I know of even to this day. . . .
>
> . . . .
>
> . . . We . . . put . . . the garage doors up . . . in front of them so that we could bring them all the way down to the bottom so we could enclose those outside runs so that when the dogs were not being let out, that they would be . . . enclosed. And that material absorbs the sound is how it works.

[2]Densmore and Intervenors owned four of the forty-three lots covered by the restrictions.

Doodles seeking a declaration that the Restrictions were valid and enforceable, requesting a temporary and permanent injunction, raising a nuisance claim, and seeking the recovery of their attorney's fees. Densmore and Intervenors alleged that the McCarleys were violating Restrictions 5, 6, and 13. The McCarleys answered, raising several affirmative defenses, including waiver and abandonment. The McCarleys stipulated that they "are operating a 'dog kennel.'"

In January 2019, the trial court held a three-day bench trial and signed a nonfinal judgment, denying Densmore's and Intervenors' declaratory and injunctive requests, which sought enforcement of "the deed restrictions at issue," and denying their claims for negligence and nuisance. On May 2, 2019, the trial court entered extensive findings of fact, including express credibility findings, and concluded that the McCarleys' affirmative defenses precluded enforcement of the Restrictions. As it had done when orally pronouncing its verdict in January at the conclusion of the bench trial, the trial court specified that its findings and conclusions "only adjudicate and affect the rights of the parties to this suit and the McCarley Property." After a hearing on the McCarleys' attorney's fees, the trial court awarded attorney's fees and costs in a May 2, 2019 final judgment. This final judgment expressly incorporated the January 2019 judgment adjudicating the merits of Densmore's and Intervenors' claims.

In Intervenors' motion for new trial, they argued that the evidence was insufficient to establish waiver or abandonment; thus, the Restrictions were

enforceable as a matter of law against the McCarleys by permanent injunction based on the McCarleys' stipulation that they were operating a dog kennel. This motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

In six issues on appeal, Densmore and Intervenors (collectively, Appellants) challenge the trial court's denial of their requests for a declaration and for a permanent injunction, contending that the evidence did not support the trial court's findings that the McCarleys had proven their affirmative defenses to Appellants' injunctive and declaratory requests, especially in light of the McCarleys' stipulation that they were operating a dog kennel. Appellants do not attack the trial court's take-nothing judgment regarding their negligence or nuisance claims, nor do they challenge the trial court's award of attorney's fees and costs to the McCarleys.

We pause to note that Appellants' issues are unnecessarily fractured, with some separately stated issues actually being subsidiary arguments relevant to a different issue, and their briefing fails to recognize the import of each issue to our ultimate disposition. *See generally* Tex. R. App. P. 38.1(f) (directing issues to be "concisely" stated with subsidiary arguments being included in each broader issue). The McCarleys' brief follows Appellants' lead by generally addressing the issues as Appellants presented them. We will consider all arguments necessary to address the core issues and necessary to a final disposition, but we will not attempt to attach a specific issue number to our conclusions. *See* Tex. R. App. P. 47.1; *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 480 (Tex. 2019) ("We have firmly

mandated that courts broadly construe issues to encompass the core questions and to reach all issues subsidiary to and fairly included within them."). To do otherwise would unnecessarily complicate an opinion where the gist of Appellants' arguments is that the trial court abused its discretion, to the extent it had discretion, by denying their requests for declaratory judgment and for permanent injunctive relief. *See, e.g., Garza v. Garcia*, 137 S.W.3d 36, 38 (Tex. 2004) ("We construe the Rules of Appellate Procedure liberally, so that decisions turn on substance rather than procedural technicality."); *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999) ("[W]e liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants."); *cf. Medina v. Zuniga*, No. 17-0498, 2019 WL 1868012, at *4 (Tex. Apr. 26, 2019) ("We need not painstakingly examine each of the requests for admissions made the basis of Zuniga's motion for sanctions to understand the gist of her argument.").

## II. STANDARDS OF REVIEW

### A. REVIEW STANDARD APPLICABLE TO CHALLENGED RULING

The parties dispute whether an abuse-of-discretion or de novo standard of review applies and how each standard affects the trial court's findings, conclusions, and resulting judgment. In fact, the McCarleys and Appellants argue that the other ignores the proper standard of review.

In general, the denial of a permanent injunction is reviewed for a clear abuse of discretion. *See Lee v. Downey*, 842 S.W.2d 646, 649 n.9 (Tex. 1992) (orig. proceeding);

*Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376, 384 (Tex. App.—Fort Worth 2002, pet. denied). But a trial court has no discretion to enter a permanent injunction absent a pleaded and proven cause of action. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011) (per curiam); *Livingston v. Livingston*, 537 S.W.3d 578, 594 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Appellants do not quibble with the dismissal of their negligence and nuisance claims; but under a liberal construction of their briefing, Appellants do take issue with the trial court's failure to enforce the Restrictions under their declaratory-judgment claims. *See* Tex. R. App. P. 38.9; *St. John Missionary Baptist Church v. Flakes*, No. 18-0513, 2020 WL 593694, at *2 (Tex. Feb. 7, 2020) (per curiam); *Rohrmoos Venture*, 578 S.W.3d at 480.

Thus, our predicate question is whether declaratory relief was unavailable as an equitable remedy because the Restrictions were unenforceable, as found by the trial court. If the Restrictions were unenforceable, the trial court was not authorized to grant permanent injunctive relief because Appellants failed to establish the McCarleys' liability for violating the Restrictions. *See Livingston*, 537 S.W.3d at 594; *cf. Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Appellants were not required to prove actual damages in order to seek to enforce the Restrictions through a declaration and injunction. *See Jennings v. Bindseil*, 258 S.W.3d 190, 198 (Tex. App.—Austin 2008, no pet.); *Park v. Baxter*, 572 S.W.2d 794, 795 (Tex. App.—Tyler 1978, writ ref'd n.r.e.).

8

Appellants challenge the legal and factual sufficiency of the evidence to support the trial court's unenforceability determination. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's findings on disputed issues are not conclusive and, when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.).

Even so, the trial court has the sole authority to determine the credibility of the witnesses, to determine the weight of their testimony, and to resolve conflicts and inconsistencies in the evidence. *Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.). As long as the evidence before the trial court falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the fact-finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We review the sufficiency of the evidence supporting the challenged findings using the same standards that we apply to jury findings. *Catalina*, 881 S.W.2d at 297.

## B. AFFIRMATIVE DEFENSES

Appellants and the McCarleys concentrate their arguments mainly on the trial court's conclusions that the McCarleys' affirmative defenses prevented enforcement of the Restrictions. Indeed, even if the McCarleys were violating the Restrictions

9

(perhaps based on the McCarleys' stipulation that they were operating a dog kennel), an established affirmative defense to enforcement would support denying declaratory and injunctive relief. *See Musgrove v. Westridge St. Partners I, LLC*, No. 2-07-281-CV, 2009 WL 976010, at *3 (Tex. App.—Fort Worth Apr. 9, 2009, pet. denied) (per curiam) (mem. op.). Appellants' sufficiency arguments regarding the McCarleys' affirmative defenses attack adverse findings on issues that Appellants did not carry the burden to prove.

By raising a legal-insufficiency argument, Appellants necessarily assert that no evidence supported the trial court's affirmative-defense findings. We may sustain such a challenge only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and must disregard contrary evidence unless a reasonable fact-finder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller*, 168 S.W.3d at 807, 827. We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

When reviewing an assertion that the evidence is factually insufficient to support an adverse finding upon which the appellant did not have the burden of proof, we may set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is too weak, or so against the great weight and preponderance of the contrary credible evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g). Evidence will be found factually sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence or on the inferences and conclusions to be drawn therefrom. *See In re Zimmer, Inc.*, 451 S.W.3d 893, 906 (Tex. App.—Dallas 2014, orig. proceeding).

### III. WAIVER OF ENFORCEMENT BY ABANDONMENT[3]

#### A. PROOF REQUIREMENTS

As we previously mentioned, the McCarleys expressly raised several affirmative defenses, including waiver by abandonment. Waiver is the voluntary relinquishment of a known right or by intentional conduct inconsistent with claiming that right. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 851 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Restrictive covenants, such as the Southridge Restrictions, may be waived. *See Clark*, 2019 WL 4010771, at *5. To establish waiver by abandonment of a specific restrictive covenant, a homeowner must have proven that existing violations were so great as to lead the mind of a reasonable person to conclude that the specific restriction in question was abandoned and its enforcement waived. *See id.*; *BCH Dev.,*

---

[3]The McCarleys and Lonestar Doodles pleaded waiver and abandonment as separate affirmative defenses. In the context of restrictive covenants, these terms are used either as two similar, but distinct, affirmative defenses (waiver **or** abandonment of the right to enforce) or as one affirmative defense (enforcement waived **by** abandonment). *See, e.g.*, *Clark v. Litchenburg*, No. 05-18-00278-CV, 2019 WL 4010771, at *5 (Tex. App.—Dallas Aug. 26, 2019, no pet.) (mem. op.); *Musgrove*, 2009 WL 976010, at *3. Because the McCarleys and Appellants have addressed waiver and abandonment together without differentiating between the two, we treat the terms as part of the same affirmative defense—enforcement waived by abandonment. *Cf. Tanglewood Homes Ass'n v. Henke*, 728 S.W.2d 39, 45–46 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (holding jury finding that right to enforce restrictions had not been waived did not conflict with finding that restrictions had been abandoned because waiver and abandonment defined differently in jury charge).

*LLC v. Lakeview Heights Addition Prop. Owners' Ass'n*, No. 05-17-01096-CV, 2019 WL 2211479, at \*7 (Tex. App.—Dallas May 21, 2019, pets. denied) (mem. op.).

However, the Restrictions here contain a severability paragraph, the purpose of which is to prevent claims of waiver by abandonment. But a severability clause does not conclusively negate the possibility that waiver has occurred. *EWB-I, LLC v. PlazAmericas Mall Tex., LLC*, 527 S.W.3d 447, 467–68 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Vance v. Popkowski*, 534 S.W.3d 474, 479 (Tex. App.— Houston [1st Dist.] 2017, pet. denied); *see Shields Ltd. P'ship*, 526 S.W.3d at 482–83 ("[W]e affirm that a party's rights under a nonwaiver provision may indeed be waived expressly or impliedly."). As such, the McCarleys cannot prevail on their affirmative defense of waiver unless they proffered sufficient evidence of conduct constituting a complete abandonment of the Restrictions as a whole, including the severability paragraph. *See Clark*, 2019 WL 4010771, at \*5; *Vance*, 534 S.W.3d at 479–80. Complete abandonment is shown through "evidence of violations so pervasive that they have destroyed the fundamental character of the neighborhood." *Vance*, 534 S.W.3d at 480; *see Musgrove*, 2010 WL 976010, at \*4. In other words, the McCarleys must have shown intentional conduct "inconsistent with claiming the right to enforce" the Restrictions—that Appellants acquiesced in extensive and material violations of the Restrictions so as to amount to an abandonment of the Restrictions as a whole, including the nonwaiver provision, resulting in waiver of the right to

13

enforce them.[4] *Shields Ltd. P'ship*, 526 S.W.3d at 485; *Davis v. Canyon Creek Estates Homeowners Ass'n*, 350 S.W.3d 301, 309 (Tex. App.—San Antonio 2011, pet. denied); *Zent v. Murrow*, 476 S.W.2d 875, 880 (Tex. App.—Austin 1972, no writ). The McCarleys urged complete abandonment in the trial court and, again, bore the burden to prove it. *See Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 673 (Tex. App.—San Antonio 2008, no pet.).

Under the circumstances presented here, waiver is a question of fact to be decided by the fact-finder. *See Tenneco*, 925 S.W.2d at 643; *Vance*, 534 S.W.3d at 481; *Musgrove*, 2009 WL 976010, at *4. *See generally Nolan v. Hunter*, No. 04-13-00072-CV, 2013 WL 5431050, at *7 (Tex. App.—San Antonio Sept. 25, 2013, no pet.) (mem. op.) ("[W]aiver is a fact-intensive inquiry involving multiple factors."). This question is answered by looking at three factors: the number, nature, and severity of the then-existing violations; any prior acts of enforcement; and whether it is still possible to realize to a substantial degree the benefits sought to be obtained through the Restrictions. *See EWB-I*, 527 S.W.3d at 466 (citing *Musgrove*, 2009 WL 976010, at *3); *Cox v. Melson-Fulsom*, 956 S.W.2d 791, 794 (Tex. App.—Austin 1997, no pet.).

---

[4]This is a different standard than the standard used when a severability clause is not at issue and when a violating party asserts that a specific restrictive covenant was abandoned or waived. *See Vance*, 534 S.W.3d at 480. Thus, the parties arguments regarding proof of waiver of the specific restrictions raised against the McCarleys are not applicable to the question we must decide.

**B. EVIDENCE REGARDING RELEVANT FINDINGS AND CONCLUSIONS**

Here, the trial court concluded that enforcement of the restrictive covenants as a whole had been waived based on repeated and material violations of the Restrictions. The trial court also determined that "the preponderance of the credible and persuasive evidence" showed that multiple breaches of the restrictive covenants were "so great as to lead the mind of the average man to reasonably conclude that the Restrictive Covenants have been waived or abandoned." Several of the trial court's fact findings informed these conclusions:

- Since the Restrictions were filed in 1981, they have been violated, "ignored," and never enforced.

- Thirty-three of the forty-three lots in Southridge—76.74%—violate the Restrictions in some respect.

- Appellants' properties violate the Restrictions in some respect.

- Several businesses and activities in Southridge are violative of the Restrictions.

**1. Appellants' Properties**

Densmore's property is located 600 yards away from and to the southwest of the McCarleys' property. At the time Densmore bought her home in 2013, it was valued by the appraisal district based on a square footage of 1,200 square feet, which violated Restriction 12.[5] Densmore later made "additions and modifications" to the

---

[5]"Any residence placed upon any tract shall contain a minimum of 1,400 square feet of living space exclusive of porches and garages . . . ."

home such that the home had approximately 2,000 square feet at the time of trial. Further, she has an agricultural-use exemption on the property for property-tax purposes, allowing her to graze and raise cows, which she previously had done and thereby violated Restriction 13 as found by the trial court. At the time of trial, Densmore had no cows on her property. After filing suit, Densmore altered the exterior of her home to comply with Restriction 12's mandate that at least 50% of a home's exterior be rock or brick.[6] Although Densmore asserted that her property did not violate the Restrictions, the trial court found that her property was not in compliance "for years before she filed suit." Densmore knew of other restriction violations in Southridge (and in two instances, she informed the offending owners about the violations[7]), but she never formally sought to enforce the Restrictions before the McCarleys opened Lonestar Doodles.

Galliton bought his home in 2009. His lot is located to the northeast of the McCarleys' lot, more than 600 yards away. Galliton has two buildings on his property that violate the fifty-foot setback provided for in Restriction 9.[8] Galliton testified that

---

[6]"Any residence placed upon any tract . . . shall be of new construction, with a minimum of 50 per cent (50%) rock or brick veneer exterior. . . ."

[7]One of the owners Densmore contacted was building a barn less than 50 feet from the property line. After Densmore sent the owner a copy of the Restrictions, the owner "went right ahead" and finished the barn. Densmore did nothing further.

[8]"All buildings must be a minimum of fifty (50) feet from the public roadway and from any side or rear property lines."

16

he did not run a business involving cattle or hay on his property; but he admitted that he had represented to the Texas Comptroller of Public Accounts when he applied for an agricultural-use property-tax exemption that his property was used for commercial agricultural purposes, violating restriction 13 as found by the trial court. Galliton noticed other violations in the neighborhood but did not seek to enforce the Restrictions as against those owners.

Loughrey's ten-acre property, which he bought in 1997, is not adjacent to the McCarleys' and is 570 yards away to the northeast. Loughrey has a barn that violates the fifty-foot setback restriction, which he built knowing of the setback restriction and that he was building it inside the setback area. He also has cattle on his property that he sells for profit, which Loughrey described as an "agricultural endeavor" and which the trial court found violated Restriction 13. He testified that he believed because his violations had continuously occurred over a number of years, enforcement had been waived and abandoned.

Located northeast of and 378 yards away from the McCarleys' property is Hankins's property, which he bought in 2007. Hankins does not live on the property because he started renting out his home to Patricia and Robert Sears in 2014. But Hankins has buildings that encroach upon the fifty-foot setback (violating Restriction 9) and the residence does not have the required rock or brick veneer (violating Restriction 12).

17

## 2. Other Properties in Violation of Restrictions

Other than Appellants' and the McCarleys' five properties, twenty-eight of the forty-three lots in Southridge were in violation of the Restrictions.[9]  Sixteen lots contained violations of the setback restriction.  Seven residences violated Restriction 12's various architectural requirements.  One lot was less than 2.5 acres, violating Restriction 8.[10]

One owner kept two pigs on his property, which violated Restriction 5.  This owner told Densmore about his pigs; Densmore did nothing to enforce Restriction 5.[11]  Two owners were violating Restriction 2: one by having an inoperable firetruck on her lot and one by having a large fiberglass pool sitting on its side in her yard.[12]  Both of these owners understood that they were violating the Restrictions.  Galliton testified that he has seen properties with "trash or junk" on them, including the fiberglass pool, but did nothing to enforce Restriction 2 against those owners.

Fourteen owners had agricultural-use exemptions on their property for taxation purposes and each swore in those applications that they commercially raised or bred

---

[9]Some lots violated more than one restriction.

[10]"None of the [Southridge] property shall ever be subdivided into tracts of less than 2½ acres each . . . ."

[11]Densmore testified she "spoke" to this owner but, as we mentioned before, she took no further action.

[12]Restriction 2 provides: "No part of the land shall be used or maintained as a dumping ground for rubbish, trash, garbage or other waste."

different types of livestock: llamas, horses, cattle, donkeys, and goats. *See* Tex. Tax Code Ann. §§ 23.42, 23.43. One of these owners testified that she was "raising horses" on her property and that she was aware she was violating the Restrictions by doing so. The trial court found that each of the fourteen violated Restriction 13. Another owner had grown vegetables and peach trees such that the trial court found he had violated Retriction 13.

Two properties were dedicated to commercial businesses. Michael and Janet Bowman ran a horse-boarding business and horseback-riding school from their property. They also had an arena for the "Cowgirl Chicks"—their daughters who participated in competitive trick-horse riding. The property owned by Universal Asset Trust contained a manufacturing facility for equine therapy equipment. This business is located directly behind Loughrey's and Galliton's properties. The trial court found both businesses to be in violation of Restriction 13. Galliton and Loughrey knew about the businesses but did nothing to enforce Restriction 13.

## C. SUFFICIENCY

Although Galliton, Loughrey, and Densmore testified that they bought property in Southridge in part because of the Restrictions, the evidence shows that the large majority of the forty-three lots in Southridge were in violation of the Restrictions. *See Musgrove*, 2009 WL 976010, at *4–6 (discussing whether purchase made in reliance on restrictions as one of many factors to assay waiver by abandonment). And Loughrey, Galliton, and Densmore were themselves violating

19

the Restrictions they relied on in deciding to buy property in Southridge. The McCarleys noticed the numerous violations on most properties in Southridge and also noticed "no one's saying a word." Some owners testified that they did not rely on the Restrictions when buying their property in Southridge. Many of the violative owners were aware they were noncompliant. It was undisputed that no owner sought to enforce the Restrictions for 35 years—from their enactment in 1981 until Densmore's enforcement action against the McCarleys in December 2016. In short, the evidence showed that Appellants' actions were inconsistent with claiming the right to enforce the Restrictions, supporting the trial court's waiver finding. *See, e.g.*, *Shields Ltd. P'ship*, 526 S.W.3d at 485; *Davis*, 350 S.W.3d at 309.

Appellants and the Searses (Hankins's renters) testified that the noise from Lonestar Doodles was disruptive; however, other owners said it was no more disruptive than the noise caused by other dogs, livestock, and businesses in Southridge. The trial court made a credibility choice and expressly credited the owners who testified that Lonestar Doodles was not unduly disruptive. Densmore testified that the character of Southridge would be destroyed if the Restrictions were held to be waived as a whole: "[M]obile homes could move in. Gun ranges could come in. Just anything, actually. Junk cars. Other businesses and stuff." But the trial court could have found, based on the evidence before it, that the existing businesses in Southridge and the other undisputed violations (including an abandoned firetruck

20

and fiberglass pool) had vitiated the benefits sought to be obtained through the Restrictions.

Some of the evidence showing that the noted violations were repeated and pervasive was undisputed. Some of the evidence on this issue was conflicting. But the trial court resolved any conflicts in favor of a waiver-by-abandonment finding, which it was entitled to do and which we may not second-guess. The pervasive and repeated violations occurring on 76.74% of the Southridge tracts with no prior effort to enforce the Restrictions allowed the trial court to reasonably determine that the general scheme or plan for Southridge had been subverted such that the Restrictions had been abandoned and enforcement waived. *See Musgrove*, 2009 WL 976010, at \*4–6; *cf. Ski Masters*, 269 S.W.3d at 673 (concluding conflicting evidence regarding whether one tract out of ten violated restrictions supported trial court's finding that restrictions had not been abandoned); *Hicks v. Loveless*, 714 S.W.2d 30, 35–36 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (finding no waiver of restrictions based on comparatively "trivial" nature of other violations, on one prior enforcement action, and on possibility purpose of restrictions could still be realized); *Garden Oaks Bd. of Trs. v. Gibbs*, 489 S.W.2d 133, 134–35 (Tex. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.) (concluding evidence of 10 other violations in 180-lot subdivision was insufficient to support denial of enforcement claim).

We conclude that the evidence was legally and factually sufficient to support the trial court's conclusion and underlying supportive findings that Appellants'

21

attempted enforcement of the Restrictions had been waived based on their acquiescence in extensive and material violations of the Restrictions and based on a 35-year course of conduct constituting abandonment of the Restrictions, including the severability clause. Accordingly, because the trial court made no "finding of liability on some underlying cause of action" against the McCarleys, the trial court did not abuse its discretion by denying Appellants' requests for permanent injunctive relief. *Etan Indus.*, 359 S.W.3d at 625 n.2; *see also Livingston*, 537 S.W.3d at 594; *Indian Beach*, 222 S.W.3d at 691.

Because the evidence was sufficient to support the McCarleys' pleaded affirmative defense to enforcement, we need not address Appellants' arguments directed to the sufficiency of the evidence to support the trial court's findings unrelated to waiver by abandonment. *See* Tex. R. App. P. 47.1; *Musgrove*, 2009 WL 976010, at *3.

## IV. REACH OF JUDGMENT

The trial court stated in the judgment that the holdings "only affect[] the parties to this suit and the McCarley Property and does not affect any other persons or property, including any other property affected by the Restrictions." The trial court had also included this provision in its findings and conclusions. Appellants contend that the trial court erred by including this restriction because it "raises many more questions than it answers":

22

When the Loughreys sell their home . . . would the buyers be free to sue the McCarleys for violating the dog kennel prohibition? . . . Are the other residents of [Southridge] who are not parties free to file their own lawsuits to halt the violation as long as they beat the statute of limitations? If the McCarleys eventually move elsewhere could the new owner operate a commercial dog kennel on the property?

. . . Are [Appellants] likewise relieved of any obligation to comply with the Restrictions on their properties? Or is it only the McCarleys who get to ignore the Restrictions and do as they please while the rest of the [Southridge] owners remain bound to comply?

Appellants argue that these unanswered questions render the judgment unenforceable.

Appellants sought relief under the Declaratory Judgments Act, which vested the trial court with the jurisdiction to declare rights as between the parties before it— Appellants and the McCarleys. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) ("A declaration does not prejudice the rights of a person not a party to the proceeding."). Even though the trial court declared that the Restrictions as a whole had been waived by abandonment, the trial court did not have the power to declare the rights of parties who had not been joined. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004); *Indian Beach*, 222 S.W.3d at 698. Although Appellants' questions may be good ones, they are a product of their choice to not join all homeowners in Southridge in their claims. *See Brooks*, 141 S.W.3d at 163.

## V. CONCLUSION

The evidence showed that the Restrictions had been repeatedly and pervasively violated over a thirty-five-year period and that Appellants had acquiesced in these violations. No owner sought to enforce the Restrictions until the McCarleys began

23

operating Lonestar Doodles. Over 75% of the lots in Southridge contained some form of restriction violation. Indulging all reasonable inferences in favor of the trial court's findings and credibility determinations, the evidence offered to prove the McCarleys' affirmative defense of waiver by abandonment was more than a scintilla. And after considering all of the evidence, we cannot conclude that the evidence supporting the trial court's waiver-by-abandonment finding is so weak that the finding must be set aside. Accordingly, the evidence is legally and factually sufficient to support the trial court's denial of enforcement of the Restrictions and denial of permanent injunctive relief on the basis of the affirmative defense of waiver by abandonment. We overrule Appellants' contrary arguments and affirm the trial court's final judgment, which incorporated the prior nonfinal judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: March 19, 2020