

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EIS DEVELOPMENT II, LLC,<br>Appellant, | § | No. 08-22-00006-CV |
| | § | Appeal from the |
| v. | § | 40th District Court |
| BUENA VISTA AREA ASSOCIATION,<br>LANCE W. HALL and HEATHER R.<br>HALL, JASON PAUL SMITHEY, DAVID<br>W. MOLENGRAAF and KIMBERLEY K.<br>MOLENGRAAF, ALEXANDER E.W.J.<br>SCHINDLER and ANGELA R.<br>SCHINDLER, as individuals | § | of Ellis County, Texas |
| | § | (TC# 104809) |
| | § | |
| Appellees. | § | |
| | § | |

**CORRECTED OPINION**

The opinion issued on March 24, 2023, is withdrawn, and the following is the corrected opinion of this Court.

Appellant, EIS Development II, LLC (EIS), appeals from the trial court's permanent injunction against building more than two main residences per five-acre tract on property it sought

to develop.[1] EIS complains of the trial court's denial of abatement to join additional parties before issuing a declaratory judgment interpreting deed restrictions, the declaratory judgment itself, the jury verdict denying EIS's "changed conditions" defense, and the trial court's permanent injunction against development based on the jury verdict. We affirm.

## FACTUAL BACKGROUND

EIS acquired 100 acres in Ellis County (the Property) and sought to begin development of a subdivision in late 2020. During the early stages of EIS's obtaining approval for the subdivision from Ellis County, certain adjacent and nearby landowners became concerned. They later formed the Buena Vista Area Association (the Association), which filed suit to stop development. Appellees are the Association and several members of the Association whom EIS added as third-party defendants.[2]

The Property was originally part of the land surrounding the City of Waxahachie which the State of Texas had acquired for construction of the Superconducting Super Collider (the SSC). After the SSC was defunded in 1993, the State began selling more than 10,000 tracts of land it had accumulated for the project. The properties were largely empty because existing structures had been bulldozed for the SSC project. The Property was initially transferred from the State to a third party in 1988, and later to Salvador Family Holdings, Ltd. (SFH) on December 17, 2019. SFH transferred the Property to EIS in November 2020.[3]

---

[1] This case was transferred from the Waco Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Waco Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

[2] All individual Appellees own land adjoining the Property.

[3] EIS is owned by George Salvador, the manager of SFH.

2

The State attached deed restrictions to each parcel of the SSC properties sold, and these restrictions included at least six various levels of deed restrictions for the various SSC properties. There were no deed restrictions on the Property prior to that time. Each time the Property was sold, it was made subject to the deed restrictions.

The deed restrictions relevant to this case state:

This conveyance is made and accepted subject to any and all covenants, conditions, and restrictions (CCR's), if any, relating to the property, but only to the extent they are still in effect, shown of record in Ellis County, Texas, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities. This conveyance is also made and accepted subject to the following CCR's:

1. No residential dwelling shall contain less than 2,200 square feet of floor space with a minimum of 1,100 square feet on the ground floor. "Square footage of floor space" excludes porches and open or closed carports or garages. A two-car garage as a minimum is required. Such square footage is that amount of area contained in the dwelling space only. The residence shall be conventional construction with 80% masonry exterior and used as a single family dwelling. ***No more than two residences may be built on any five acre tract.*** A guest house or servants' quarters may be built behind a main residence location, but must be less than 900 square feet and of like construction as the main residence. Barns and outbuildings shall not be used for residential purposes. (emphasis added).

2. The property is designated as residential, and shall be used for that purpose.
 . . . .

11. The term of these CCR's are to run with the land and shall be binding on all persons in title to the tract, in whole or part for a period of twenty (20) years from the effective date of this deed, after which time they shall be renewed automatically for successive periods of ten years unless changed by agreement of 80% of adjoining property owners.

The CCR's set forth herein may be enforced by any adjoining landowners by action in the appropriate Court of Ellis County, but only after 30 days written notice of an alleged violation of these CCR's to the landowner.

EIS proceeded with developing the Property, planning to construct a subdivision known as Sunset Meadows. The subdivision was platted with seventy-three homes on 100 acres, with all but one lot being smaller than two acres. In going through the process of having the Planning & Zoning

3

Commission of the City of Waxahachie approve the plat, the City required EIS to give notice to all contiguous landowners. Property owners near the planned subdivision learned of the development and formed the Association for the purpose of enforcing the deed restrictions.[4]

## PROCEDURAL BACKGROUND

In late 2020, the Association filed suit seeking declaratory judgment on the meaning of the deed restrictions and related temporary and permanent injunctions.[5] The Association argued that the restriction of "no more than two residences per five acre tract" limited development to residential lots with a five-acre minimum size, since those two residences would include a main residence and a guest house or servant's quarters.

In January 2021, EIS's predecessors in the suit filed a plea in abatement, original answer, counterclaim, and third-party petition, challenging the Association's standing; seeking abatement for the purpose of adding the State and all adjoining landowners as necessary parties; asserting the affirmative defenses of abandonment/waiver, changed conditions, and estoppel; and seeking declaratory judgment against the Association and third-party individual landowners that the deed restrictions were no longer enforceable.[6] A temporary injunction hearing was scheduled for January 27, but during the hearing, the parties agreed to a continuance. They later entered into an extensive Rule 11 agreement, filed on February 5, 2021, alleviating the need to complete the hearing on the temporary injunction.

---

[4] The Association's members include some, but not all, of the landowners adjoining the proposed subdivision as well as owners of non-adjoining properties.

[5] Specifically, the Association filed suit against SFH and Lillian Custom Homes on December 8, 2020. The Association later amended its petition to substitute EIS as the only defendant after it learned of the November 2020 transfer of the Property and a subsequently filed correction deed.

[6] Although the individual landowners were not parties to the proceedings until this stage, they are all Appellees, and for purposes of this appeal they have interests identical to the Association. From this point forward, we will refer to the Association and the third-party individual landowners collectively as "the Association."

4

By Rule 11 agreement, the parties agreed to allow substitution of EIS for the original defendants through the filing of a second amended petition, and the original defendants agreed to dismiss their claims. The parties also agreed to a temporary restraining order stopping construction on the Property but permitting completion of the grading and excavation work. The second amended petition sought the same relief as the first, and EIS filed its own plea in abatement, answer, counterclaims, and third-party claims identical to those previously asserted. EIS also asserted affirmative defenses identical to those raised by its predecessors.

As part of the Rule 11 agreement, the parties agreed to submit the interpretation of the deed restrictions and EIS's affirmative defenses, counterclaims, and third-party claims to the trial court through the Association's motion for partial summary judgment, which it filed on March 10, 2021. The parties also agreed to enter into joint stipulations to narrow the contested issues before the trial court. They submitted eighteen pages of stipulations, filed on the same day as the Association's motion for partial summary judgment. The parties agreed to request an expedited, preferential trial setting; to abate discovery until the summary judgment was resolved, with an exception for discovery from the State regarding the intent and interpretation of the deed restrictions; and to keep the agreed temporary injunction in effect until the summary judgment was resolved.

The Association sought traditional summary judgment on the interpretation of the deed restrictions and determination of EIS's plea in abatement. The Association sought both traditional and no-evidence summary judgment on EIS's affirmative defenses, counterclaims, and third-party claims.

EIS responded there had been inadequate time for discovery. EIS argued the deed restrictions were ambiguous and more time was needed for discovery to determine their meaning,

5

purpose, and intent. EIS argued the Association had not established its right to summary judgment on EIS's affirmative defenses.

The trial court granted partial summary judgment on the meaning of the deed restrictions, concluding that the restrictions "unambiguously limit development on the Property . . . to **no more than two main residences** per five-acre tract" (emphasis in original). The trial court dismissed with prejudice all EIS's affirmative defenses and counterclaims, and third-party claims with the exception of its affirmative defense on changed conditions. As to changed conditions, the trial court determined only those changed conditions that had occurred after SFH acquired the Property should be considered. Based on its partial summary judgment, the trial court entered a temporary injunction, enjoining EIS from constructing more than forty "main residences" on the Property, with no more than two main residences per five-acre tract. The court set the changed conditions issue for jury trial.

At trial, the only issue before the jury was whether EIS had met its burden of proving the affirmative defense of changed conditions by a preponderance of the evidence. The jury determined EIS did not establish the changed conditions defense. Based on the jury verdict, the trial court entered judgment against EIS, granting declaratory relief that the deed restrictions were valid and enforceable, and a permanent injunction against building more than two main residences per five-acre tract.

EIS appealed.

## DISCUSSION

EIS raises several issues on appeal, which restated are: (1) the trial court erroneously denied its plea in abatement to add necessary parties; (2) the trial court erred in denying additional discovery; (3) the trial court erred in granting summary judgment by determining the deed

restrictions unambiguously permitted no more than two residences per five-acre tract; (4) the trial court erred in dismissing its affirmative defenses of waiver, estoppel, acquiescence, and abandonment on summary judgment; (5) the trial court improperly instructed the jury on the changed conditions defense and the jury improperly found no changed conditions; and (6) the trial court used improperly ambiguous language in its permanent injunction.

In response, the Association argues the trial court did not err in not joining parties because EIS did not file a verified plea as required by the Texas Rules of Civil Procedure and the declaratory judgment would not affect the rights of the non-joined parties. The Association argues the trial court properly interpreted the deed restrictions because EIS's proposed interpretation was untenable. With respect to the trial court's granting of summary judgment, the Association contends the trial court correctly dismissed EIS's affirmative defenses because the Association's members had not had a previous opportunity to enforce the restrictions. The Association asserts the trial court correctly instructed the jury on the temporal limits on the changed conditions defense because the instruction reflected current Texas law and the jury's finding against the changed conditions defense was supported by the evidence. Finally, the Association urges EIS failed to preserve in the trial court its complaint about the language of the permanent injunction.

We agree that the trial court did not abuse its discretion in rendering judgment and a permanent injunction against EIS. We affirm.

## STANDARD OF REVIEW

Appellants raise several issues on appeal, each with its own standard of review.

7

## A.    Plea in abatement

We review a trial court's ruling on a plea in abatement for an abuse of discretion. *Martin v. Cottonwood Creek Constr., LLC*, 560 S.W.3d 759, 764 (Tex. App.—Waco 2018, no pet.) (citing *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981)).

"Trial courts have 'great discretion' with regard to the joinder (and non-joinder) of third parties." *In re Occid'l W. Overthrust, Inc.*, 626 S.W.3d 395, 400 (Tex. App.—El Paso 2021, orig. proceeding) (quoting *In re Corcoran*, 401 S.W.3d 136, 139 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding)).

## B.    Summary judgment

We review a trial court's granting of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *Herrera v. Resignato*, 621 S.W.3d 835, 840 (Tex. App.—El Paso 2021, no pet.). When the summary judgment motion at issue is a hybrid motion containing both traditional and no-evidence portions, and both parties bring forth summary judgment evidence, the differing burdens of proof are immaterial; the ultimate issue is whether a fact issue exists. *Tex. Dep't of Motor Vehicles v. Bustillos*, 630 S.W.3d 316, 331 (Tex. App.—El Paso 2021, no pet.) (citing *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012) (per curiam)). A fact issue exists if there is more than a scintilla of probative evidence. *Herrera*, 621 S.W.3d at 841 (citing *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex 2003)).

We use an abuse of discretion standard to review a trial court's determination there has been adequate time for discovery before a no-evidence summary judgment. *Schronk v. Laerdal Med. Corp.*, 440 S.W.3d 250, 263 (Tex. App.—Waco 2013, pet. denied). We review these decisions on a case-by-case basis, considering factors such as these:  (1) the nature of the case; (2) the nature of evidence necessary to controvert the no-evidence motion; (3) the length of time

8

the case was active; (4) the amount of time the no-evidence motion was on file; (5) whether the movant had requested stricter deadlines for discovery; (6) the amount of discovery that had already taken place; and (7) whether the discovery deadlines in place were specific or vague. *Id.* at 263–64.

We review the trial court's interpretation of a restrictive covenant de novo, using the general rules of contract construction. *W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 220–21 (Tex. App.—El Paso 2017, no pet.). Whether a restrictive covenant is ambiguous is also a question of law we review de novo. *Elbar Invs., Inc. v. Garden Oaks Maint. Org.*, 500 S.W.3d 1, 3 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

## C.    Jury trial issues

Whether a jury instruction misstated the law is a question of law that we review de novo. *Meyers v. 8007 Burnet Holdings, LLC*, 600 S.W.3d 412, 421 (Tex. App.—El Paso 2020, pet. denied); *see Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010) (whether definition submitted in charge was legally incorrect is reviewed de novo).

The final test for whether the evidence was, as a matter of law, sufficient to support a jury's verdict is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Rayner v. Claxton*, No. 08-20-00145-CV, 2022 WL 3952440, at *7 (Tex. App.—El Paso Aug. 31, 2022, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will sustain a legal sufficiency or "no evidence" challenge to a jury's verdict only if the record demonstrates: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered in support of a vital fact; (3) no more than a scintilla of evidence is offered to prove a vital fact; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* (citing *City of Keller*, 168 S.W.3d at 810).

"When conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not." *Id.* (citing *City of Keller*, 168 S.W.3d at 810).

When we review the factual sufficiency of the evidence supporting a jury verdict, we examine all the evidence and set aside a finding only if the finding's supporting evidence is so weak as to be clearly wrong and manifestly unjust. *Id.* at *8 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). When conducting either a legal or factual sufficiency review, "we are mindful that the jury, as fact finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Id.* (citing *City of Keller*, 168 S.W.3d at 819).

**D.     Injunctive relief**

The granting of injunctive relief is ordinarily within the trial court's sound discretion and may be reviewed on appeal only for the question of whether the action constituted a clear abuse of discretion. *Yacoub v. City of Houston*, No. 06-21-00092-CV, 2022 WL 2162942, at *3 (Tex. App.—Texarkana June 16, 2022, no pet.) (mem. op.) (citing *Jim Rutherford Invs., Inc. v. Teramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). An abuse of discretion occurs "when the trial court misinterprets or misapplies the law or acts arbitrarily or unreasonably." *Id.* When a permanent injunction is based on previous actions in the trial court, such as the granting of a motion for summary judgment or the incorporating of a jury finding, the appropriate standards of review for each of those underlying actions must be applied. *See id.* (citing *Jim Rutherford Invs.*, 25 S.W.3d at 848).

**ANALYSIS**

As EIS asserts error in several phases of the proceedings in the trial court, we address its issues at each stage.

10

**A.    Plea in abatement**

EIS first argues the trial court erred in denying its plea in abatement to add necessary parties. EIS alleged over 12,000 acres in Ellis County were condemned for the SSC and were sold to a large number of purchasers after the SSC was defunded, yet the Association failed to join both the State as the original grantor imposing the deed restrictions and all landowners adjoining the Property, whom EIS claimed to be necessary parties.[7]

The Association responds EIS did not properly raise this issue in the trial court, as it did not file a verified pleading and any error is not fundamental error. Alternatively, it maintains the trial court did not abuse its discretion because the Association's claims against EIS did not implicate the rights of the State or other property owners in a way that required their joinder.

We do not address the Association's claim that this issue should be reviewed under a fundamental error standard due to EIS's failure to file a verified plea in abatement. Such analysis is unnecessary because EIS's contentions fail under a lower standard of review—the abuse of discretion standard EIS urges applies in this situation. *See In re Occid'l*, 626 S.W.3d at 400.

Section 37.006(a) of the Texas Civil Practice and Remedies Code provides, "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a). If a party asserts this section as a bar to any judgment favoring a party who has failed to join all necessary parties to the

---

[7] On appeal, this prospective group has grown to include "all landowners with property impacted by the same language in the [deed restrictions] imposed by the State[.]" We do not consider this group of persons to be included as necessary parties, because EIS has not argued that the failure to include them resulted in a lack of jurisdiction, and this claim was raised for the first time on appeal. *See Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 37 S.W.3d 538, 540–41 (Tex. App.—El Paso 2001, pet. denied); TEX. R. APP. P. 33.1(a).

11

suit, Rule of Civil Procedure 39 governs which parties are necessary. *Amboree v. Bonton*, 575 S.W.3d 38, 44 (Tex. App.—Houston [1st Dist.] 2019, no pet). Rule 39 requires that:

> A person who is subject to service of process shall be joined as a party in the action if
>
> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may
>
> > (i) as a practical matter impair or impede his ability to protect that interest or
> >
> > (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

TEX. R. CIV. P. 39(a). EIS relies on only section (2) of Rule 39 on appeal.

Generally, trial courts have broad discretion in determining whether to allow permissive joinder of parties, but whether parties *must* be joined under subsection 37.006(a) should be determined using the analysis under Rule 39. *In re Austin Hous. Fin. Corp.*, No. 03-22-00091-CV, 2022 WL 2960796, at *3 (Tex. App.—Austin July 27, 2022, orig. proceeding) (mem. op.) (citing *Royal Petrol. Corp. v. Dennis*, 332 S.W.2d 313, 317 (Tex. 1960) and *Twin Creeks Golf Grp. v. Sunset Ridge Owners Ass'n*, 537 S.W.3d 535, 547 (Tex. App.—Austin 2017, no pet.)). Although Rule 39(a) is couched in mandatory language, "there is no arbitrary standard or precise formula for determining whether a particular person falls within its provision." *Id.* (quoting *In re Boyaki*, 587 S.W.3d 479, 483 (Tex. App.—El Paso 2019, orig. proceeding)). The party seeking the abatement has the burden of showing that the non-joined parties are, in fact, necessary. *Id.*

"[A] plea in abatement based on nonjoinder 'should show definitely and specifically the nature and extent of the interest of such person who is claimed to be a necessary party,' and must

'give the court definite allegations as to the parties and the interests claimed by them.'" *Id.* at *2 (quoting *In re Occid'l*, 626 S.W.3d at 401). "Rule 39 does not require joinder of persons who **potentially could** claim an interest in the subject of the action; it requires joinder, in certain circumstances, of persons who **actually** claim such an interest." *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 913 (Tex. 2017) (emphasis added); *see In re Boyaki*, 587 S.W.3d at 483–84.

In *In re Austin Housing Finance Corp.*, the Austin Court of Appeals considered whether the trial court abused its discretion in granting a plea in abatement for the purpose of joining three classes of parties to a declaratory judgment action seeking determination of whether a provision in a subdivision's plat applied to the property in question and would prohibit the erection of a building on the property because it was smaller than the minimum lot size requirements. 2022 WL 2960796, at *1. The landowners sought to abate the action, asserting that the developers' defenses of waiver and estoppel required them to join as necessary parties under the Declaratory Judgments Act the other lot owners in the subdivision, mortgage service providers who held a security interest in any property and/or a deed of trust for any lot in the subdivision, and the subdivision's homeowners' association. *Id.* The trial court determined the other lot owners and mortgage service providers had a "vested interest" in the minimum lot size provision contained in the plat and suspended the lawsuit until the developer added all three classes of non-joined parties. *Id.* at *1–*2.

However, the court of appeals determined the trial court abused its discretion in ordering the joinder of all three groups of non-joined parties, stating the record did not establish that joinder was necessary. *Id.* at *4. The court noted the only evidence produced in support of the plea in abatement was a copy of the plat containing the disputed minimum lot size provision. *Id.* at *3. Though the landowners contended that document alone was sufficient to demonstrate other lot

owners claimed certain contractual rights under their recorded deeds and restrictive covenants, the Austin Court of Appeals disagreed, stating, "[a]t most, such evidence suggests that the other lot owners may potentially claim an interest in the subject of this action." *Id.*

Although more evidence was produced in this case, as in *In re Austin Housing*, nothing in the record establishes that non-joined adjacent landowners have "demanded recognition or otherwise asserted or established any right or privilege that would rise to the level of an actual claimed interest in the subject matter of the underlying action."[8] *See id.* (citing *In re Corcoran*, 401 S.W.3d at 139 (action for declaratory judgment in suit against a homeowner to enforce compliance with a deed restriction does not implicate the rights of other homeowners)). Similarly, the record before us is devoid of an actual claimed interest made by the State. *See id.* (citing *Crawford*, 509 S.W.3d at 913).

In its plea in abatement, EIS urged that the State, plus all other adjoining landowners who purchased property from the State and whose deeds contain the same or similar deed restrictions were necessary and indispensable parties; however, it presented no argument as to why besides the same or similar deed restrictions. On appeal, EIS argues the State was a proper party because it retains standing to bring suits regarding the restrictions it creates. EIS presented no evidence that any of these adjoining landowners or the State claim an interest in the subject of this action; at most, EIS's arguments suggest that the adjoining landowners and the State might potentially claim an interest in the subject of this action.

While EIS cites *Dahl v. Hartman*, 14 S.W.3d 434 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) for the proposition that all property owners in an area impacted by a deed restriction

---

[8] We note the parties stipulated in the trial court that some non-party adjoining landowners to the Property have "some version" of the deed restrictions, but the content of those deed restrictions is not in the record.

14

must be made parties to a declaratory judgment action seeking interpretation of that restriction, the *In re Austin Housing* court distinguished *Dahl* on the same basis. 2022 WL 2960796, at *3. The court noted, "unlike other situations in which a party challenged the application of a restriction to an entire subdivision, . . . here the declaratory judgment action as pleaded is narrowly concerned with the applicability and enforceability of the provision as to only the [property in question]." *Id.* Here, the Association also narrowly pleaded the declaratory judgment action at hand, applying it to only the property in question.

Accordingly, the record does not establish that joinder of adjacent landowners or the State was mandatory, and the trial court did not abuse its discretion by refusing to abate proceedings to allow their joinder. *See id.* at *4 (citing *In re Corcoran*, 401 S.W.3d at 140 and TEX. R. CIV. P. 39(a)). Issue One is overruled.

**B.      Summary judgment**

EIS argues the trial court erred in granting partial summary judgment. As a threshold matter, EIS claims the trial court erred in denying additional discovery. Next, it contends the trial court erred in determining the deed restrictions unambiguously permit no more than two residences per five-acre tract. EIS also claims the court erred in dismissing its affirmative defenses of waiver, estoppel, acquiescence, and abandonment. We first address the denial of additional discovery and then address each issue on the merits.

*1.  Time for additional discovery*

EIS argues the trial court erred in implicitly denying its motion for continuance of the summary judgment hearing in light of its request for time for additional discovery. EIS also argues the trial court erred in determining no additional time was needed for discovery on the no-evidence points.

15

As to the denial of additional discovery on the meaning of the deed restrictions, EIS avers the trial court erred in denying additional discovery to determine the State's purpose[9] in drafting the restrictions and their context. The Association responds that EIS did not ask to delay the summary judgment hearing to seek additional discovery on purpose of the deed restrictions, but even if it had, the trial court had discretion to deny such a request.

The record reflects EIS did not file a pleading titled "motion for continuance." In arguing it did move for continuance, EIS references its response to the Association's summary judgment motion, where it stated the Association's no-evidence summary judgment should be denied because discovery had not been completed and there had not been adequate time for discovery. But EIS's response did not request additional time for discovery, either at that point in the pleading or in the prayer.

EIS argues two affidavits attached to its response to the Association's motion for summary judgment make clear it sought continuance for the purpose of determining the State's intent. The affidavits each state "it is my opinion that it would be necessary to do further investigation and obtain additional evidence . . . to properly ascertain the intent of the State." EIS also references its counsel's statement at the summary judgment hearing that no determination on the State's intent could be made until the parties had "heard" from the State and it had identified two persons to depose on the issue.

However, none of these acts amount to a motion for continuance. The record thus reflects EIS never requested a continuance to obtain discovery on the intent and context of the deed restrictions and the related issue of the State's intent in drafting them.

---

[9] EIS uses both "purpose" and "intent" in describing the additional discovery it contend it sought. The context here indicates EIS is using these words interchangeably, and we address its arguments accordingly.

16

EIS cites *Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999), urging it is the substance of a motion, and not its title, that determines the relief sought. Here, though, neither the title, the substance of the pleading, nor the prayer request continuance. It merely requested denial of summary judgment. *See Turner v. Ward*, 910 S.W.2d 500, 503 n.4 (Tex. App.—El Paso 1994, no writ) (noting that the guiding rule is that motions be treated as to their substance, not their form); *Mercer v. Band*, 454 S.W.2d 833, 836 (Tex. App.—Houston [14th Dist.] 1970, no writ) ("A motion's substance is to be gleaned from the body of the instrument and its prayer for relief."). Thus, EIS's argument that it requested continuance for discovery on the intent and context of the deed restrictions, having never been properly raised in the trial court, does not present an issue for our review. *See* TEX. R. APP. P. 33.1(a)(1).

EIS further argues under Rule 166a(i) the trial court erred in determining there had been adequate time for discovery in response to the Association's no-evidence summary judgment. *See* TEX. R. CIV. P. 166a(i). Again, EIS references its statement in response to the Association's summary judgment motion that discovery had not been completed and there had not been adequate time for discovery, thus summary judgment should have been denied. Assuming without deciding that this statement sufficiently constitutes a motion for continuance, the trial court did not abuse its discretion in impliedly denying the motion.

EIS argues that evidence of the State's purpose and intent in drafting the deed restrictions was necessary to properly determine the no-evidence points. The cases it cites, however, do not stand for the proposition that the trial court ***must*** review ***purpose and intent*** evidence in determining the meaning of the deed restrictions, but that the trial court ***may*** consider circumstantial, objective evidence to inform a contract's unambiguous language. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 767–68 (Tex. 2018). (emphasis added). *URI* states only when a

17

contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the meaning of the instrument. *Id.* at 764–65. As discussed below, we determine (as did the trial court) that the deed restrictions in question are unambiguous. Because the deed restrictions are unambiguous, no fact issue was raised as to the parties' intentions. *See Columbia Gas Transm'n Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

EIS also argues the purpose of the restrictions must be taken into account in the consideration of a waiver/abandonment defense, but it cites no authority on point. Rather, the cases it points to discuss the defense of changed conditions. *See EWB-I, LLC v. PlazAmericas Mall Tex., LLC*, 527 S.W.3d 447, 460 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Moseley v. Arnold*, 486 S.W.3d 656, 663 (Tex. App.—Texarkana 2016, no pet.) (considering intent as to determining intended beneficiaries and in establishing changed conditions). Here, the trial court determined a fact issue existed as to changed conditions, and that issue was tried to a jury.

Further, the parties addressed the need for discovery, discovery deadlines, and deadlines for filing for summary judgment in their extensive Rule 11 agreement. The parties agreed to abate discovery until after summary judgment, except for discovery from the State regarding the intent and interpretation of the deed restrictions. The Rule 11 agreement, filed on the same date the Association filed its amended petition, required the Association to seek summary judgment on the interpretation of the deed restrictions and on EIS's defenses, counterclaims, and third-party claims by February 22, 2021. It also required EIS to file its response to the motion by March 19, 2021.[10]

The Rule 11 agreement further required the parties to work in good faith to enter into stipulations regarding facts relevant to the summary judgment issues. The parties did enter into

---

[10] The Association filed its motion for partial summary judgment on March 10, 2021, and due to the extreme freeze of February 2021, the parties entered into a supplemental Rule 11 agreement, which set EIS's deadline to respond to the motion as April 2, and the parties agreed to request a hearing on the motion on April 15, 2021.

18

extensive stipulations that consisted of eighteen pages plus ninety pages of exhibits. These stipulations addressed issues including whether any landowners protested the plat-approval process at the city or county level and the location of and date construction began for other developments with lots under 2.5 acres—evidence relevant to waiver.

Considering the record before us, it is apparent the parties approached summary judgment with very few disputed issues. In fact, EIS complains of only two areas of discovery it was unable to obtain—discovery regarding the State's intent in drafting the deed restrictions and evidence of waiver/abandonment by member landowners and third parties. Although EIS withheld from its agreement to abate discovery, the subject of discovery sought from the State regarding "the intent of, and interpretation of," the deed restrictions, it did agree to the very abbreviated partial summary judgment schedule, which required the Association to file a motion for partial summary judgment on interpretation of the deed restrictions and EIS's affirmative defenses and counterclaims and third-party claims less than a month after the Association filed its amended petition substituting EIS as the proper defendant. In effect, EIS gave itself less than a month to complete discovery on the issue it now complains it had insufficient time to explore. *See Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 204 S.W.3d 473, 481 (Tex. App.—Corpus Christi 2006, pet. denied) (an appellant cannot be heard to complain of a matter on appeal to which he agreed in a Rule 11 agreement in the trial court). At the summary judgment hearing, the trial court heard argument from counsel regarding the contents of the Rule 11 agreement, their stipulations, and the parties' reasoning behind entering them, then decided to take up both the traditional and the no-evidence motions.

Taking all these factors into consideration, we determine the trial court did not abuse its discretion in denying additional discovery and proceeding to consider the Association's motion for partial summary judgment. Issue Two is overruled.

2. *Interpretation of deed restrictions*

EIS claims the trial court erred in granting summary judgment by determining the deed restrictions unambiguously permit no more than two residences per five-acre tract by improperly interpreting the contract.

Restrictive covenants are subject to the general rules of contract construction. *W. Hills*, 516 S.W.3d at 220. When construing a restrictive covenant, our primary duty is to ascertain the parties' intent. *Lakeside Vill. Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 30 (Tex. App.—El Paso 2017, pet. denied). "We begin with the contract's express language." *EWB-I*, 527 S.W.3d at 457 (citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805–06 (Tex. 2012)). We are to focus on the parties' objective intent, as reflected in the written contract, rather than their subjective intent. *Lakeside Vill.*, 545 S.W.3d at 30. "We must examine the covenant as a whole in light of the circumstances present when the covenant was made, and give a restrictive covenant's words and phrases their commonly accepted meaning." *Id.* We should give effect to every sentence, clause, and word of a covenant and avoid constructions that would render parts of the covenant superfluous or inoperative. *Id.*

A restrictive covenant is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). It is ambiguous if, after applying the pertinent rules of construction, it is susceptible to more than one reasonable interpretation. *EWB-I*, 527 S.W.3d at 457 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223,

20

229 (Tex. 2003)). A restrictive covenant is not ambiguous simply because the parties advance conflicting interpretations of it. *See Columbia Gas Transm'n*, 940 S.W.2d at 589.

The Rule 11 agreement stated the Association would submit a motion for partial summary judgment seeking a determination whether the deed restrictions allow "(i) one main residence per five acres; (ii) two main residences per five acres; (iii) are ambiguous but only between allowing one main residence per five acres and two main residences per five acres; or (iv) are ambiguous and can reasonably be interpreted in a way other than (i) and/or (ii)." The specific restrictive covenant in question states, "No more than two residences may be built on any five acre tract." By its partial summary judgment, the trial court determined the deed restrictions unambiguously limit development on the Property to no more than two main residences per five-acre tract.

We agree. The ordinary and commonly accepted meaning of "only one residence" has been held to mean one single-family dwelling, so it follows that two residences would mean two single-family dwellings. *See Stephenson v. Perlitz*, 532 S.W.2d 954, 956 (Tex. 1976). EIS argues, though, that this phrasing is a ban on multi-family dwellings. We are not persuaded.

The same paragraph of the deed restrictions that specify "no more than two residences may be built on any five-acre tract" also gives a number of specifications for *any* residence. For example, the restrictions provide no residential dwelling shall contain less than 2,200 square feet, a two-car garage at a minimum is required, and the residence shall be conventional construction with 80% masonry exterior. And the restrictions provide the residence "shall be . . . used as a single family dwelling." We must give effect to every sentence while avoiding a construction that would render a part of the covenant superfluous. *See Lakeside Vill.*, 545 S.W.3d at 30. Because the ban on multifamily residences is stated through this phrase, we determine that the "no more than two residences" language is not a ban on multifamily housing.

21

Having determined "no more than two residences" is not a ban on multifamily housing, we determine the language "no more than two residences per five acre tract" unambiguously establishes a density limitation of two residences per five-acre tract. *See Viking Props., Inc. v. Holm*, 118 P.3d 322, 324, 329 (Wash. 2005), *abrogated on other grounds by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019) (recognizing that "[n]o building . . . except a single family . . . house on each one-half acre in area" is a density limitation).

The same paragraph of the deed restrictions refers to residences, main residences, and guest houses or servants' quarters. Read together, it is clear the restriction anticipates two types of homes: main residences and guest houses/servants' quarters. The relevant portion reads:

> The residence shall be conventional construction with 80% masonry exterior and used as a single family dwelling. No more than two residences may be built on any five acre tract. A guest house or servants' quarters may be built behind a main residence location, but must be less than 900 square feet and of like construction as the main residence.

The "main residence" of the third sentence necessarily refers back to the "residence" of the first sentence, as that is where the "like construction" is defined. The trial court's addition of "main" to its interpretation of the deed restriction merely serves to clarify which of those types of residences are allowed and does not change the meaning of the restrictions as drafted. Finally, the Rule 11 agreement specified four alternative interpretations of the deed restrictions that the parties anticipated would be addressed in the Association's motion for partial summary judgment, and the two unambiguous alternatives agreed to by the parties (one main residence per five acres or two main residences per five acres) both included "main" as a descriptor of "residence."

Having reviewed the deed restrictions to ascertain the parties' objective intent, giving the words and phrases their commonly accepted meanings, giving effect to every part, and avoiding

22

superfluous or inoperative constructions, we determine the trial court's interpretation of the restrictions is correct.

EIS also argues the trial court erred in construing the deed restrictions because it applied the wrong rules of construction, failed to find that the language unambiguously was not a residential density requirement, or, in the alternative, failed to find that the language was ambiguous.

EIS's argument that the trial court applied the wrong rules of construction implicates the interplay between the Property Code's direction to construe restrictive covenants liberally and the common-law rule that restrictive covenants are to be strictly construed against the party seeking to enforce them. *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279–85 (Tex. 2018); TEX. PROP. CODE ANN. § 202.003(a). EIS notes that the supreme court has recognized and declined to determine a split among courts of appeals on this point; however, it urges that this Court has already determined on which side of the split it stands.

The rule of construction EIS would have us apply is the liberal construction dictated by the Property Code in the case of unambiguous restrictions, with the addition that any doubts should be resolved in favor of the free and unrestricted use of the premises, and any ambiguity strictly construed against the party seeking to enforce the restrictive covenant. *See Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied). We do not agree that our Court has adopted this position through our reference to *Buckner* for the proposition that the Property Code dictates liberal construction of restrictive covenants. *See W. Hills*, 516 S.W.3d at 220. In *Western Hills,* we dealt with the burden of proving that restrictive covenants were validly amended to allow collection of assessments. *Id.* at 217, 221. We did not deal with the issue of whether a particular restrictive covenant was ambiguous and we relied on

23

*Buckner* only for the proposition that § 202.003 of the Property Code requires liberal construction of restrictive covenants. *Id.* at 220.

Like the supreme court in *Tarr*, we do not have to decide today whether the common-law standards of strict construction have any place in our construction of restrictive covenants because we have determined that the deed restrictions in this case are unambiguous. *See* 556 S.W.3d at 285 ("A day may come when we must choose between strictly or liberally construing restrictive covenants. But it is not this day."). EIS's first contention fails.

Next, EIS argues the trial court erred in failing to find that the deed restriction unambiguously was not a residential density requirement. EIS makes a two-part argument in support of this proposition: (1) the "two residences" language was meant to restrict the use of multifamily homes on the Property; and (2) the "per five acre tract" language was used to ensure proper platting in smaller lots. Although EIS raised the "no multifamily" reading at the temporary injunction hearing, it did not raise the "proper platting" argument prior to appeal. This "proper platting" argument will therefore not be considered. *See Kent v. Smith*, 410 S.W.2d 833, 839 (Tex. App.—Tyler 1967, no writ); TEX. R. APP. P. 33.1(a). Even without the second part, this argument fails because as discussed above, the "no multifamily" restriction appears in a separate sentence within the restrictions, such that applying the "no multifamily" meaning to a second portion of the restriction would be superfluous.

Finally, EIS argues that even if we disagree with its proposed reading of the deed restriction, it should at least be viewed as a reasonable alternative interpretation, thus raising an ambiguity precluding summary judgment. This argument fails for the same reason as the last: the "no multifamily" restriction appears in a separate sentence of the restrictions. Applying that

meaning to the restriction in question would be superfluous and is thus not a reasonable alternative interpretation under the rules of contract construction.

As the trial court properly interpreted the deed restrictions, summary judgment on this point was proper. Issue Three is overruled.

### 3. Affirmative defenses[11]

EIS contends the trial court erred in dismissing its affirmative defenses (except for changed conditions) on summary judgment because it concluded there was no evidence or no genuine issue of material fact.

"Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *EWB-I*, 527 S.W.3d at 465 (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)). Waiver of a restrictive covenant occurs "when a party to a restrictive covenant acquiesces in 'substantial violations within the restricted area' such that it waives the right to enforce the restrictions." *Id.* at 466 (quoting *Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958)).

How the Association could have waived its rights to enforce the deed restrictions must first be examined under the definition of waiver itself—the relinquishment of a known right. *Id.* at 465. Here, that right is the right of the adjoining landowners to enforce the deed restrictions on the Property, specifically granted to them by the terms of the deed restrictions themselves: "The [deed restrictions] may be enforced by any adjoining landowners . . . ." *See Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist.*, 438 S.W.3d 661, 667 (Tex. App.—Houston [1st Dist.] 2014,

---

[11] EIS notes both practitioners and courts tend to use "abandonment," "waiver," "acquiescence," and "estoppel" interchangeably when addressing restrictive covenant enforcement. *See Ortiz v. Jeter*, 479 S.W.2d 752, 756 (Tex. App.—San Antonio 1972, writ ref'd n.r.e.). We refer to all EIS's affirmative defenses, except for changed conditions, as "waiver."

pet. denied) ("In disputes over deed restrictions, a person has standing to enforce the restriction only upon showing that the restriction was intended to inure to his or her benefit."); *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("A third party has standing to enforce a contract when contracting parties explicitly intend to benefit the third party."). The Association sought declaratory judgment on this right.

EIS contends it raised genuine issues of material fact on waiver by providing evidence of numerous deed restriction violations within the SSC "restricted area," that is, the 10,000 tracts of land that were former SSC properties, including the Property. This argument misconstrues the law and is inconsistent within EIS's own arguments.

EIS argues the landowners adjoining the Property waived their right to enforce the deed restrictions because they failed to complain about other subdivisions being developed in their area—indeed, even very close to them—based on the law that requires an owner in a subdivision to act upon deed restriction violations within his own subdivision lest he risk waiving his right to do so. *See, e.g.*, *Cowling*, 312 S.W.2d at 944–45. EIS argues the development of these other subdivisions provides evidence of violations resulting in waiver because the subdivisions may have been subject to the same or similar deed restrictions as the Property.

Conversely, the Association responds that landowners adjoining the Property had the opportunity to waive only rights they actually had. *See City of Alton v. Sharyland Water Supply Corp.*, 145 S.W.3d 673, 682 (Tex. App.—Corpus Christi 2004, no pet.) ("Third-party beneficiaries to a contract acquire the same rights and standing to enforce the contract as those held by one of the contracting parties."); *Fowler v. Brown*, 535 S.W.2d 46, 47 (Tex. App.—Waco 1976, no writ)

26

("A waiver takes place where one dispenses with the performance of something which he has a right to exact.").

The landowner plaintiffs could attempt to enforce only deed restrictions they had a right to enforce. With respect to this Property, their right to enforce was endowed upon them by the terms of the deed restrictions in the deeds that transferred the Property to EIS; that is, they had a right to enforce deed restrictions on the Property, provided they were an "adjoining landowner" under the deed restrictions. *See Country Cmty.*, 438 S.W.3d at 667. The landowners adjoining the Property had no right to enforce deed restrictions on land they did not adjoin, even if that non-adjoining land had the same set of deed restrictions. Thus, they could not waive their right to enforce deed restrictions on the Property by failing to object to violations that did not take place on it. *See Fowler*, 535 S.W.2d at 47. Even though there may be numerous landowners in the vicinity of the Property who own properties that were once a part of the SSC project, and even though the same or similar deed restrictions may have been used in the chain of title for most or all of those landowners, there is no evidence that individual landowners adjoining the Property had rights to enforce deed restrictions on any other properties in the area other than the Property, because their right runs with the land, *i.e.*, the Property.

Accordingly, as a matter of law, landowners adjoining the Property could not have waived their rights to enforce deed restrictions on the Property by violations of deed restrictions on other properties conveyed by other instruments that did not give them any rights. Because EIS could not establish waiver as a matter of law, the trial court did not err in granting summary judgment on this affirmative defense. Issue four is overruled.

## C.    Jury trial

EIS complains of the trial court's instruction to the jury regarding a temporal limitation associated with the changed conditions defense and the jury's finding that the conditions had not changed in such a manner as to make it impossible to secure in a substantial degree the benefits the deed restrictions seek to achieve.

### 1.  Jury instruction

EIS argues the trial court should have determined the purpose of the deed restrictions prior to submitting the changed conditions question to the jury. EIS claims the trial court should have either permitted discovery as to purpose or instructed the jury as to its interpretation of the purpose of the deed restrictions.

The Rule 11 agreement provided for abatement of discovery prior to the summary judgment hearing, but it did not address discovery after summary judgment. Even though the trial court decided the meaning of the deed restrictions was unambiguous and gave its meaning as a matter of law, there is nothing that prevented EIS from conducting discovery after summary judgment but before trial on the issue of changed conditions. In addition, EIS did not request continuance of the trial or any other relief to conduct additional discovery on the purpose of the deed restrictions. Thus, EIS has not preserved error on this point. *See* TEX. R. APP. P. 33.1(a).

The trial court's failure to submit a jury instruction on the purpose of the deed restrictions likewise was not preserved for appeal. EIS did not present an instruction on the purpose of the deed restrictions, and the failure to submit an instruction is not a ground for reversal unless a substantially correct instruction has been requested in writing and tendered by the party complaining of the judgment. TEX. R. CIV. P. 278.

With respect to the temporal limitation on changed conditions, the trial court instructed the jury as follows: "In determining whether a great change has occurred, do not consider changes that occurred before Salvador Family Holdings, Ltd. acquired the Property on December 17, 2019." In submitting its proposed instruction on the temporal limitation, the Association relied upon *Davis v. Canyon Creek Ests. Homeowners Ass'n*, 350 S.W.3d 301, 310 (Tex. App.—San Antonio 2011, pet. denied). *Canyon Creek* cites cases from four of our sister courts that have recognized "a landowner cannot rely on 'changed conditions' that have already occurred by the time he acquires the property." 350 S.W.3d at 310 (collecting cases). This temporal restriction in *Canyon Creek* references an earlier Texas case, *Lebo v. Johnson*, 349 S.W.2d 744, 749–50 (Tex. App.—San Antonio 1961, writ ref'd n.r.e.), which EIS accordingly refers to as "the *Lebo* rule."

The authorities cited by EIS, in combination with its analysis of the evolution of the changed conditions defense, present the questions of whether the *Lebo* rule is valid and if so, whether it should be applied to "massive and spotty rural deed restrictions" in addition to suburban subdivisions. However, the two cases cited by EIS do not deal with rural deed restrictions, and neither considered the question of whether changes prior to acquisition were relevant to the changed conditions defense. *See EWB-I*, 527 S.W.3d at 452 (involving a shopping mall); *Simon v. Henrichson*, 394 S.W.2d 249 (Tex. App.—Corpus Christi 1965, writ ref'd n.r.e.) (involving a subdivision). Thus, EIS cites no Texas authority that the *Lebo* rule is not applicable precedent. The trial court did not misstate the law in instructing the jury to consider changes only after Salvador acquired the property.

*2. Jury verdict*

EIS also claims the jury improperly found against its changed conditions defense because it either established the defense as a matter of law or the jury's decision was against the great weight and preponderance of the evidence.

The jury was presented with only one question:

In the area that the Deed Restrictions apply to and the surrounding area, have conditions greatly changed, making it impossible to secure in a substantial degree the benefits that the Deed Restrictions seek to achieve?

To determine whether a great change has occurred, you should consider:

(1) the size of the restricted area;

(2) the location of the restricted area with respect to where the change has occurred;

(3) the type of change or changes that have occurred;

(4) the character and conduct of the parties or their predecessors in title;

(5) the purpose of the restrictions; and

(6) to some extent, the unexpired term of the restrictions.

These elements were proposed by the Association and are the same ones found in *Canyon Creek*, 350 S.W.3d at 309. This instruction preceded the temporal limitation discussed above.

The jury was also presented with the following stipulations:

1. EIS owns a Property of 73 Lots totaling approximately 100 acres that is at issue in this lawsuit.

2. EIS's predecessor, Salvador Family Holdings, Ltd., acquired this Property on December 17, 2019.

3. The Property has Deed Restrictions in its chain of title that provide:
   a. "No more than two residences may be built on any five acre tract. A guest house or servants' quarters may be built behind a main residence location. . . ."

4. EIS plans to develop seventy-three (73) single family residential lots (hereafter singularly a "Lot" and collectively, the "Lots") on the Property. There will be one (1) main residence on each of the Lots.

5. All but one of the Lots that EIS plans to develop will be less than two acres, with the sole exception of a Lot of approximately 3.4 acres that includes a drainage and utility easement.

The Association presented as evidence EIS's response to an interrogatory requesting each change in condition EIS alleged was a basis for the changed condition defense. The interrogatory directed EIS to state, among other things, the nature of the change and the date of the change. EIS listed sixteen subdivisions, with the "nature of change" for each listed as "less than 2.5 acre lots." Of these, only four subdivisions had dates on which the alleged changes took place after December 17, 2019. The Association showed at trial that three of those four were over a mile and a half away from the property. The fourth, Pioneer Point, was the only one of the sixteen properties that EIS identified as having violated deed restrictions; with respect to the other fifteen properties, EIS stated whether deed restrictions had been violated was unknown. Salvador testified that four of these sixteen subdivisions manifested plat changes after the Property was purchased, and in all sixteen there is ongoing building on smaller lots.

At trial, EIS presented a map identifying the area around the property in which it claimed changed conditions had occurred and evidence that the SSC properties have greatly changed since they were sold after the defunded project. The condemned SSC properties were largely empty before it was defunded because existing structures had been bulldozed for the SSC project. After the SSC was defunded, the State began selling the property, and it added six different levels of restrictions on the land it sold. A real estate broker who testified for EIS could not identify which of the properties within that area were former SSC properties covered by deed restrictions. He

estimated that 40-50% of the property within the identified area was covered by the deed restrictions and the remaining properties were not.

Two members of the Association, Mr. Hall and Mr. Smithey, both landowners adjoining the property and individual third-party defendants, testified on behalf of the Association. Hall said he bought his property seeking the "country life," and he has built a house and runs cattle on his fifty acres. He testified his property is quiet, peaceful, and very dark at night. Hall said he cannot see any subdivision from his property, even Pioneer Point, the subdivision less than a mile and a half away identified by EIS as having violated deed restrictions. Two videos were played for the jury. The first showed Hall's daily commute from his property to I-35, in which he passed only Pioneer Point and no other subdivision. Because of a tree line and changes in topography, Pioneer Point is not visible from Hall's property. The second video showed drone footage at 100 feet, and Pioneer Point is the only subdivision that is visible.

Smithey testified he bought his property in 1998, "blank" at that time as the houses in the area had been torn down in anticipation of construction on the SSC. Smithey told the jury he enjoys unrestricted views and sees no developments from his property. The only change identified by Smithey since he bought his property is that people in the area have built one house on ten-acre tracts.

The Association called George Salvador to testify. He testified he paid $1,000,000 for the Property and was unaware of the deed restrictions when he purchased it, although he admitted he could have found the deed restrictions through a title search. He said he did not expect there to be any deed restrictions because he was developing Pioneer Point with even smaller lots less than a mile away, on a property with the same deed restrictions as the Property, and had not had any

32

issues. There was no testimony Salvador had attempted to amend the deed restrictions on the Property as provided by their own terms—securing agreement of 80% of adjoining landowners.

In Salvador's experience, one-acre lots within the extra-territorial jurisdiction of the City of Waxahachie were permitted by City and County requirements. Salvador testified that, in his opinion, the relevant mapped area has substantially changed since 2008. He testified there were at least sixteen subdivisions in the area impacted by the SSC deed restrictions with lots smaller than 2.5 acres. Those subdivisions were from 0.3 miles to 3.4 miles from the Property. Salvador testified that even though some of these properties were platted before he purchased the Property, all the developments were continuously being developed, meaning the "small" lots were still being built on each development. Salvador testified these changes have been driven by a change in the market in the last ten to fifteen years. He stated preferences have changed from 2.5-acre lots to one-acre lots because one-acre lots are easier to maintain. Salvador also testified about a new development with 19,000 lots announced after he purchased the Property, named Emory Lakes, about 1.3 miles from the Property. Emory Lakes is within the Waxahachie city limits and construction had not begun at the time of trial. EIS's witness did not know whether any of Emory Lakes is subject to the SSC deed restrictions.

A realtor who sold the Property to EIS testified local realtors were unable to find maps of the former SSC properties, but he estimated 40-50% of properties in the mapped area had SSC deed restrictions. The realtor testified that the area was mostly rural twenty years ago and is now developed. He said the City of Waxahachie had approved zoning for the Emory Lakes development that would permit 3.4 residential lots per acre. There will be about 12,000 homes on 2,880 acres, and that does not include the commercial, retail, shopping centers, or planned town

33

center. He testified the Emory Lakes development would bring as many rooftops to the area as already existed at that time.

The evidence that conditions have changed in the vicinity of the Property was uncontroverted. What was controverted was whether those changes were so great that it is impossible to secure the benefits of the deed restrictions. There was evidence of changes that have occurred and their dates and locations, but consideration of the changes presented was limited by the court's instruction as to the timeframe of changes to be considered. The density-limiting deed restrictions and EIS's plans to put seventy-three single-family lots on the 100-acre Property were all presented. The landowners adjoining the Property testified they are relatively unaffected by nearby developed subdivisions, as they cannot see them from their properties.

Taking into account all the factors of the changed conditions defense, EIS did not establish that any changes were so great that the benefits of the deed restrictions can no longer be achieved. EIS did not establish its changed conditions defense as a matter of law.

An examination of the factors the jury may have considered in concluding EIS had not established the changed conditions defense shows their determination was also not against the great weight of the evidence.

As to the first factor, the size of the restricted area, EIS did not take a consistent position regarding the size of the "restricted area"—the area covered by deed restrictions—and the area that it asserted should be considered for changed conditions. It answered interrogatories, which were presented to the jury as evidence, that listed subdivisions up to just over three miles away from the Property as properties that should be considered for its changed conditions defense. However, on appeal, it took the position that *all* the former SSC properties were restricted properties to be considered in the size of the restricted area. It did so even though all former SSC

34

properties were apparently not covered by the same set of deed restrictions (there was evidence of six "levels" of deed restrictions), and EIS presented evidence that only one, Pioneer Point, was covered by similar deed restrictions. At trial, counsel for EIS told the jury the size of the restricted area and/or the changed condition area was not stated in the charge, and the area they should consider was left to their discretion. The Association argued the restricted area was limited to the Property at issue and the changed condition area to those properties EIS identified in answer to interrogatories. Although EIS has argued on appeal the restricted area includes the entire former SSC property, the jury was free to determine the restricted area was only the 100-acre Property in question, and this smaller restricted area weighs in favor of the Association.

If the jury determined the restricted area was limited to the Property, the jury could have concluded no changes had happened in the restricted area at all, as there was no testimony as to physical changes to the Property. EIS argues on appeal that the platting of the Property was a change that should have been considered, but a "change" that is not a physical change to the character or use of the property is not likely one the jury gave much weight. The nearest post-EIS-purchase change was Pioneer Point, 0.3 miles away "as the crow flies" or a mile and a half on the road and not visible from the properties of the landowners who testified. All other changes were also developing subdivisions but were farther from the Property than Pioneer Point. This factor weighs in favor of the Association because the property owners indicated that these previous changes were immaterial to them.

There was ample testimony that properties in the vicinity of the Property had undergone changes from previously undeveloped properties to new subdivisions with small lots, but all but four of the properties EIS called changes in response to interrogatories took place before the Property was purchased, outside the temporal limits of the jury charge. Two of the four changes

asserted by EIS were not new subdivisions but additional phases in subdivisions that were initially developed before the Property was purchased. The Emory Lakes development had not begun construction at the time of trial. These changes, however, are the types of changes that are unwelcome by the Association, and this factor weighs in favor of EIS.

The landowners who testified said they purchased their properties in order to obtain a rural way of life, and they testified that they do use their properties for that lifestyle. One also testified that when he made improvements to his own property, he followed the deed restrictions "to the T." Although there was no testimony that they voiced objections to the development of other subdivisions in their vicinity, they testified they cannot see those other subdivisions from their properties. Salvador testified he bought the property assuming he could develop it and showing no regard for whether there were deed restrictions on the Property. He assumed because he was developing another subdivision nearby, he would be able to develop this Property as well. He apparently made no attempts to secure agreement of adjoining landowners to do away with the deed restrictions per the terms of the deed restrictions themselves. This factor weighs in favor of the Association.

No testimony was adduced about the purpose of the deed restrictions, but the language of the deed restriction was provided to the jury, as was EIS's plan to develop the Property at a higher residential density than dictated in the deed restrictions. This factor weighs in favor of the Association.

The deed restrictions' term was to be twenty years with automatic ten-year renewal periods unless changed by agreement of 80% of adjoining property owners. There was no evidence of any attempts to prevent automatic renewal through agreement to change the restrictions. This factor weighs in favor of the Association.

The Association notes that the jury was presented with evidence that may have affected the weight they gave to the testimony of EIS's witnesses, Salvador and Hess. Central to the lawsuit was the fact that Salvador purchased the Property intending to develop it into a subdivision with seventy-three homes, which he could not do under the deed restrictions. His economic interest in the property was directly connected to his ability to establish the changed conditions defense and defeat the deed restrictions. Hess, the realtor when Salvador purchased the Property, failed to inform Salvador about the deed restrictions, so he may have had an interest in favoring the changed conditions defense so as to allow his client to develop the Property in the way he intended to upon purchase. The jury is "the sole judge of the credibility of the witnesses and the weight to be given their testimony." *E. Tex. Educ. Ins. Ass'n v. Ramirez*, 631 S.W.3d 908, 918 (Tex. App.—El Paso 2021, pet. denied). This evidence of potential bias may have caused the jury to discount the testimony of Salvador and Hess.

Based on an examination of all the evidence presented, we cannot set aside the jury's determination that the changed conditions had not occurred because the evidence supporting the jury finding is not so weak as to be clearly wrong and manifestly unjust. *See Rayner*, 2022 WL 3952440, at *7. Issue Five is overruled.

## D.  Permanent injunction

Finally, EIS argues the trial court erred in entering an ambiguous permanent injunction against it. The injunction enjoins EIS from building "more than two main residences per five-acre tract," copying the language from the summary judgment and identical to that in the deed restrictions, except for the addition of the word "main."[12]

---

[12] We note this case only addresses the deed's specific language regarding the number of residences per five-acre tract and does not affect any other deed covenant, condition or restriction.

EIS did not raise the issue of the specificity of the permanent injunction in the trial court, and we conclude that he has waived this complaint on appeal. TEX. R. CIV. P. 33.1(a); *see Livingston v. Livingston*, 537 S.W.3d 578, 598 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Issue Six is overruled.

## CONCLUSION

Having determined the trial court did not err in rendering partial summary judgment and the jury's verdict was not against the great weight and preponderance of the evidence, we determine the trial court was within its sound discretion in granting a permanent injunction against EIS. *See Yacoub*, 2022 WL 2162942, at *3 (citing *Jim Rutherford Invs.*, 25 S.W.3d at 848). We affirm the trial court's judgment and its permanent injunction against EIS.

We therefore affirm the judgment of the court below and its permanent injunction against EIS. We order that Appellees recover from Appellant and its sureties, if any, for performance of the judgment and all costs in the court below. We further order that Appellant and Appellees each pay their respective one-half (1/2) of the costs of this appeal.

YVONNE T. RODRIGUEZ, Chief Justice

April 12, 2023

Before Rodriguez, C.J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)